Harvey ROBBINS, Plaintiff,

v.

GEORGE W. PRESCOTT PUBLISHING CO., INC., K. Prescott Low, Richard D. Allen, Donald C. Wilder, Edward R. Querzoli, Robert E. Cady, Fred R. Turner, Jr., Defendants.

Civ. A. No. 78–127–C.

United States District Court,
D. Massachusetts.

Sept. 28, 1978.

Paul A. Schneiders, Canton, Mass., for plaintiff.

Richard A. Perras, Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is a labor dispute between a sports reporter, the newspaper for which he formerly worked, and its managing officials. Originally filed in Norfolk Superior Court, this action was removed to this Court by defendants pursuant to 28 U.S.C.A. § 1441(b), and is now before the Court on defendants' motions to dismiss.

Read in the light most favorable to plaintiff, the Amended Complaint presents the following allegations. Harvey Robbins was employed from September 11, 1967 to October 18, 1977 as a sportswriter for the Patriot Ledger, a daily newspaper published by the defendant George W. Prescott Publishing Co., Inc. (Company) and widely circulated in 30 suburban communities south of Boston. The Company is a party to a collective bargaining agreement (The Agreement) with a labor organization, the Patriot Ledger Editorial Association (The Association), of which Robbins was a member. During the eight years of his employment, Robbins was regularly assigned to report on professional sporting events and faithfully performed his duties. He consequently developed a reputation as a leading New England sportswriter, winning particular awards for his coverage of the Boston Celtics team and harness racing. Robbins' insightful, award-winning coverage of the Celtics allegedly stemmed from his ability to gain the personal respect of many members of that team. The Company, on various occasions, used advertising that proclaimed Robbins' success as a sportswriter and also featured photographs of him driving his own harness-race horse and training with the Celtics as a uniformed member of the squad.

Prior to and throughout his employment with the Company defendant boarded his horse at Maresfield Farm in Canton, Massachusetts. In August, 1975, the owner of the farm died and the farm was subsequently offered for sale. One prospective buyer of the farm desired to have part of the farm rezoned for commercial use. Another prospective buyer, David Cowens, a player for the Boston Celtics known personally by the plaintiff, wished to retain the character of the farm unchanged. Plaintiff, not unexpectedly, desired that the parcel retain its uncompromised character as a horse farm. As the land involved was environmentally significant because of its proximity to the Blue Hills Reservation, the residents of Canton became embroiled in a long dispute over the prospective use of the land. On September 14, 1977, the Patriot Ledger, independently and without any encouragement from Robbins, published an article by Cowens concerning his reasons for purchasing the farm. The article immediately engendered a strong negative reaction, including threats of legal action, towards the Company from the citizens and town officials of Canton, thereby jeopardizing the circulation and prosperity of the Patriot Ledger. The Company, in writing, then notified Robbins that he must cease and desist in any involvement with Maresfield Farm. Robbins contends: that his interest in the farm predated his acquaintance with Cowens; that such interest never conflicted with his responsibilities to the Patriot Ledger; and that he never involved the newspaper in the land-use dispute; that he did not cause the Cowens article to be published as a news article rather than a letter to the editor; and that the cease-and-desist order violated Article IX of the Agreement. Article IX provides in pertinent part:

*Outside Activities*

In recognition of the trust and confidence placed in the newspaper by its readers and the general public, the Association and the Publisher mutually agree that it is essential to avoid any conflict of interest which compromises or which may reasonably appear to the public to compromise the integrity or the credibility of the newspaper or its staff.

It is also agreed that the newspaper is the employee's principal place of employment and that outside activities that interfere with an employee's job performance should be avoided or relinquished.

Pursuant to this understanding, the following provisions are established:

1. Outside of their work hours, employees shall be free to engage in those activities that do not interfere with their office duties and which are not harmful to the newspaper's best interests.

.    .    .    .    .

4. Membership in political groups, parties and other organizations of a special interest nature shall not be abridged by the Publisher provided such participation does not involve the employee in a manner that also conflicts with the employee's duty and responsibilities to the newspaper, or compromises or appears to the public to compromise the integrity of the newspaper or its staff. An employee who accepts a position in such a group which is more responsible or more visible than that of an ordinary member must apprise the Publisher in writing at the outset.

.    .    .    .    .

6. No employee shall knowingly in any way exploit or attempt to exploit his or her connection with the newspaper or the Publisher without the Publisher's consent. Neither shall the Publisher nor his representative knowingly engage in any activity which exploits the newspaper's connection with the employee without the employee's consent.

7. Any discharge or other disciplinary action based upon this article shall be subject to the grievance and arbitration provisions of Article XI of this agreement in accordance with the terms of Article VII, Section 3.

A copy of the order was not sent to the Association, as required by Article VII(3) of the Agreement. Article VII(3) provides:

.    .    .    . *Security*

3. There shall be no written warnings, demotions, suspensions or discharges without just cause. A copy of such action will be sent to the Association. Employees shall have the right to representation by the Association on any matter. When an employee is discharged, the employee shall receive two weeks notice or two weeks pay in lieu thereof.

On September 20, 1977, the Company reassigned Robbins from coverage of the Boston Celtics to coverage of college and high school sports. Robbins characterizes this action as a demotion, taken without just cause and in bad faith, and violative of Article VII(3). The alleged motive was to shift the blame and embarrassment of the Cowens article to someone other than the Patriot Ledger. Robbins then filed grievances with the Association challenging the cease and desist order and the demotion. Robbins refused to accept the ordered reassignments during the pendency of the grievances, claiming the public visibility of the demotion would permanently damage his career as a journalist. The Company, allegedly in bad faith, steadfastly refused to accept Robbins' several offers to resume his prior position pending resolution of the grievances. On October 18, 1977, while the grievances were still pending, the Company discharged Robbins, allegedly without just cause in breach of Article VII(3). Robbins maintains that the Company never intended to, and never did, submit itself to the grievance procedure in good faith.

As to damages, Robbins claims a loss of salary and mileage-expense reimbursement since November 1, 1977, a loss of reputation, an inability to obtain an equal or better employment status, "great physical and emotional anguish," and severe and permanent damage to his career. The relief requested includes damages of one-million dollars, reinstatement to an equal or higher position with uninterrupted seniority, retirement, and other benefits, and an award of back pay and expense benefits, including all projected step-increases, retroactive to November 1, 1977.

The Amended Complaint sets forth two theories of recovery: (1) breaches by the employer-Company of the substantive provisions of the valid collective bargaining agreement entered into with the Association, the labor organization representing Robbins; and (2) various intentional, malicious, and otherwise tortious inducements and interference by the six individual defendants—all of whom are either manage-

ment officials or editors of the Company or the Patriot Ledger—to cause the Company to breach its contractual obligations to the plaintiff, as embodied in the Agreement. In particular, it is alleged that these defendants circulated oral statements and written memoranda within the Patriot Ledger, declaring that Robbins' interest in the disposition of Maresfield Farm presented a conflict of interest, that Robbins had injured the Patriot Ledger's reputation, and that Robbins was "too close" to Cowens to cover the Celtics objectively.

■ The contract claim is asserted under Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S. C.A. § 185(a); the tort claim, which arises under state law, is a matter within the pendent jurisdiction of this Court, because it is derived from a nucleus of operative fact common to the substantial contract claims which do arise under the laws of the United States. *See* 28 U.S.C.A. § 1441(c); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In addition, the tort claims, whether prosecuted in a state or federal forum, facially require, as a matter of federal labor law, an interpretation of the substantive terms of the Agreement and an application of the grievance and arbitration exhaustion requirement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

As a preliminary matter, the Court, in its discretion, will consider the matters outside the complaint contained in the affidavits and exhibits submitted by both sides. Consequently, this motion will be treated under Fed.R.Civ.P. 12(b) as one for summary judgment under Fed.R.Civ.P. 56.

Defendants argue that the contractual claims should be dismissed for two reasons: (1) plaintiff has not exhausted the grievance and arbitration procedures provided for by Article XI of the Agreement; and (2) the allegations in the complaint do not amount to a "repudiation" of those proce-dures by the Company excusing such exhaustion.

Article XI provides:

*Grievance and Arbitration*

1. A grievance is any dispute concerning wage, hours or the interpretation of this agreement between the Association and/or any employee covered by this agreement and the Publisher.

2. Should a grievance arise, it shall be discussed informally between the parties and, if not satisfactorily resolved, it shall be referred to a committee consisting of two representatives designated by each party to this agreement.

3. The committee shall meet within ten working days of receipt of the written grievance and shall continue to meet as long as there is mutual agreement to do so. A majority of the committee, or at least three members, shall be necessary to decide a grievance.

4. At such time as the committee determines it is unable to resolve a grievance, then either party to this agreement may request arbitration under the auspices of the American Arbitration Association pursuant to the rules of said Association. The decision of the Arbitrator shall be final and binding on both parties.

5. It is the intention of both parties that grievances shall be filed and acted upon with reasonable promptness.

Plaintiff does not challenge the validity of Article XI, the characterization of the alleged substantive breaches as grievable and arbitrable, the mandatory, imperative language of the grievance and arbitration provision, the facial exclusivity of the grievance and arbitration remedy, or the applicability of federal labor law to his contract claims. Nor does he allege any breach by the Association of its statutory duty to fairly represent him in any grievance proceedings. Rather Robbins asserts that the grievance and arbitration procedures apply only to present employees and not to terminated employees. This patently ignores those cases brought by former employees in which claims of wrongful discharge were made and which held that such claims were

amenable to contractual grievance machinery. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 556, 562–63, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Boone v. Armstrong Cork Co.,* 384 F.2d 285, 288 (5th Cir. 1967).

The touchstones for any analysis of the requirement to exhaust collectively-bargained grievance and arbitration procedures, prior to the initiation of suit under 29 U.S.C.A. § 185(a), are the decisions in *Republic Steel Corp. v. Maddox, supra,* and *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966). In *Republic Steel,* the Supreme Court reversed a state court judgment awarding severance pay to a terminated employee who had made no attempt to utilize a three-step grievance procedure, supplemented by binding arbitration, which was contained in the collective bargaining agreement. *Id.,* 379 U.S. at 650–51, 85 S.Ct. 614. In so holding, the Court mandated that employees and unions resort to available contractual grievance and arbitration procedures as a prerequisite to a judicial suit for the resolution of a labor dispute. 379 U.S. at 652–53, 85 S.Ct. 614. *Accord, Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 562–63, 96 S.Ct. 1048.

■ Robbins, in his first argument, focuses on the emphasis in *Republic Steel* on the word "attempt." He claims that the filing and the still pending nature of his grievances regarding the cease-and-desist order and the alleged demotion satisfy the exhaustion requirement. I rule that this literal, formalistic reading of *Republic Steel* is mistaken. As suggested by the Court's subsequent discussion in *Vaca v. Sipes, supra,* and by a recent decision of the First Circuit Court of Appeals, *Cruz Soto Segarra v. Sea-Land Service, Inc.,* 581 F.2d 291 at 294–296 (1978), the employer's exhaustion defense and the employee's contractual obligation to grieve and arbitrate both contemplate a persistent attempt to fully exhaust the available dispute-resolution procedures established by the bargaining agreement. *See id.,* 386 U.S. at 184, 87 S.Ct. 903. The Supreme Court's use of the word "attempt" was directed at those limited instances in which an employee is prevented or obstruct-

ed from exhausting grievance and arbitration procedures because of wrongful employer or union conduct. *See id.* at 184–85, 87 S.Ct. 903. A holding that *any* attempt to invoke the grievance machinery, however perfunctory, satisfied the exhaustion prerequisite would leave those procedures vulnerable to manipulative filings and nominal resolution efforts.

In the instant case it is undisputed by the complaint and opposing affidavits that no grievance was ever filed regarding Robbins' discharge and that the joint grievance filed concerning the cease-and-desist order and the demotion, which was the subject of only one face-to-face discussion between Robbins, the Association and the Company, was never pursued to arbitration by the plaintiff although the Association and the Company were, and remain, willing to go that route. Instead, Robbins, through his attorney's letter to the Association on October 26, 1977, less than two weeks after his discharge, disassociated himself from the union's efforts on his behalf in order "to reserve his comments for another forum." The Association then terminated its efforts, mistakenly believing that Robbins' discharge and his initiation of litigation obviated non-judicial resolution of the two pending grievances.

■ Under the procedure set forth in Article XI of the Agreement, a bona fide attempt at full exhaustion would require, in turn, informal discussions between the parties, reference to a committee, resolution of the grievance by the committee, and final and binding arbitration should the committee be unable to decide the grievance. My review of the complaint and opposing affidavits convinces me that the minimal undisputed efforts made by this plaintiff do not constitute such an attempt to fully exhaust the contractually imposed procedures. Therefore, since there is no genuine issue as to these material facts, Robbins' complaint is subject to summary judgment on behalf of defendants unless an excuse should be forthcoming for his failure to exhaust contractual grievance and arbitration procedures.

Robbins, relying on *Vaca v. Sipes, supra,* contends that he should be excused from the normal exhaustion requirement because the conduct of the Company and its agents, when viewed in the light most favorable to the plaintiff, rises to the level of a "repudiation" by the employer, of the grievance and arbitration procedures. In *Vaca,* an employee, who alleged similar claims of wrongful discharge, asserted that full exhaustion of existing grievance and arbitration procedures was not required because his union had breached its statutory duty of fair representation by refusing to take his grievance to arbitration. The Court agreed, and noted, by way of dicta, that:

> An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. *Cf. Drake Bakeries v. Bakery Workers,* 370 U.S. 254, 260–263 [82 S.Ct. 1346, 8 L.Ed.2d 474]. *See generally* 6A Corbin, Contracts, § 1443 (1962). In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action.

*Id.* at 185, 87 S.Ct. at 914.

What began as dicta is now accepted federal labor-law doctrine. *E. g., Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518, 519 (5th Cir. 1978); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 875–76 (3d Cir. 1972).

■ Analytically and temporally, acts by an employer which are alleged to be substantive breaches of a bargaining agreement—here the cease-and-desist order, the demotion, the discharge, and the failure to send a copy of the order to the Association—cannot also serve as anti-remedial acts constituting employer repudiation of the grievance and arbitration procedure established for the resolution of those earlier substantive breaches. *See Rabalais v. Dresser Industries, Inc., supra,* at 520. To hold otherwise would allow the repudiation exception to swallow whole the exhaustion requirement, since underlying substantive claims of breach of contract will always be at issue in § 301 cases.

■ The only allegations of improper conduct by this employer are: (1) The Company refused to rescind the discharge and fully reinstate plaintiff pending final disposition of his grievances; (2) the Company "in bad faith used the grievance procedure as a tactical means of intentionally precipitating the termination of plaintiff's employment either by resignation or discharge;" (3) the Company "in no way ever intended to or ever did submit to the grievance procedure in good faith."

■ Plaintiff asserts that these allegations adequately declare employer repudiation of the contractual procedures. This argument, however, misconstrues the repudiation exception to the exhaustion requirement. That exception, as explained in *Vaca v. Sipes, supra,* 386 U.S. at 185, 87 S.Ct. 903, applies when the employer's wrongful refusal to abide by the grievance and arbitration procedures effectively prevents an employee from fully exhausting those procedures. *Cf. Boone v. Armstrong Cork Co., supra,* at 291, 292. This plaintiff's claims do not rise to that level. Simply stated, the Company cannot be held to have repudiated procedures which Robbins had barely invoked.

Robbins' argument, which could be echoed by almost every § 301 plaintiff, that he is excused from resolving his claims through available contractual procedures because the Company has neither rescinded its actions, reinstated him, nor conceded that it had violated the contract, in no way establishes ignorance, obstruction or repudiation of the contract's remedial procedures by the Company. Those stances by the employer are simply consistent with the Company's position that Robbins was properly discharged. This conclusion is reinforced by a recent similar holding by the Court of Appeals for the Fifth Circuit:

> [Plaintiff's] argument, however, clearly confuses repudiation of the grievance procedure and a refusal to accept an em-

922

ployee's position with respect to a grievance. An employer can obviously take a stance contrary to that of the employee during the grievance procedure without being deemed to have repudiated that process.

*Rabalais v. Dresser Industries, Inc., supra* at 520.

The alleged "methodical escalation" from the cease-and-desist order to the demotion to the discharge is a pattern of conduct common to those employers who always seek to deal with a burgeoning labor problem in the least restrictive manner. That pattern is an insufficient allegation of such disregard of the Agreement by the employer as to amount to repudiation.

■ In addition, while Fed.R.Civ.P. 8 does not require a host of specific facts, naked, conclusory allegations of "intentional" bad faith and maliciousness are not enough to plainly state a colorable claim of employer repudiation excusing a failure to exhaust. *See generally Smith v. Pittsburgh Gage & Supply Co., supra,* at 875–76; *Boone v. Armstrong Cork Co., supra,* at 289, 290; *Joftes v. Kaufman,* 324 F.Supp. 660, 662 & n.1, 664 (D.D.C.1971).

Over and above the deficient pleading, the record contains the supporting affidavit of the Vice-President and General Manager of the Company declares:

> The Company is ready and willing to resolve grievances regarding the discharge of the plaintiff from employment with the Company and/or any other grievances regarding the plaintiff through the grievance and arbitration procedure provided in the collective bargaining agreement between the Company and the Association.

That willingness, which is reiterated in the four Company letters to plaintiff and the Association attached to this affidavit, has not been overcome by the conclusory allegations of Robbins' complaint or affidavits. *See* Fed.R.Civ.P. 56(e); *Giaccobe v. Providence Journal Co.,* Civil No. 77–0800 slip op. at 6 (D.R.I. filed March 7, 1977). *See generally Adickes v. Kress & Co.,* 398 U.S. 144, 160–61 & n.22, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Therefore, I rule that defendants have carried their burden of showing no genuine issue of material fact as to whether the Company's actions amounted to a repudiation of the grievance and arbitration procedures. *Cf. Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 521–22 (3d Cir. 1973); *Baxter v. Railway Express Agency, Inc.,* 455 F.2d 693, 696–98 (6th Cir. 1972). Accordingly, summary judgment on the contract claims should enter for defendants as a matter of law plaintiff has inexcusably failed to exhaust fully the Agreement's grievance and arbitration procedures. *See generally Beriault v. Local 40, I.L.&W.U.,* 501 F.2d 258, 262–63 (9th Cir. 1974).

Pending the completion of arbitration proceedings, as a matter of discretion the Court declines to exercise its pendent jurisdiction as to the tort claims and will continue the case generally as to those claims.

Order accordingly.