Louis Earl **MELANSON**

v.

**JOHN J. DUANE COMPANY, INC. and Building Wreckers Local 1421, Chelsea, Mass. of the Laborers International Union of North America.**

Civ. A. No. 74–4564–Z.

United States District Court, D. Massachusetts.

Sept. 4, 1980.

Diane W. Hayes, Hayes & Hayes, Quincy, Mass., for plaintiff.

Jason Berger, Peabody, Brown, Rowley & Storey, Boston, Mass., for defendant company.

Ira Sills, Segal, Roitman & Coleman, Boston, Mass., for defendant union.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff brought this action under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, against John J. Duane Company, Inc., ("Duane") to redress various grievances and complaints which arose out of his employment by and his dispute with Duane. He alleges unfair labor practices in violation of the National Labor Relations Act because he was paid less than the amount to which he was entitled under the collective bargaining agreement (Count I), violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207 (Count II), defamation (Count III) and intentional infliction of emotional distress (Count IV). He asserts against defendant Building Wreckers Local 1421 of the Laborers International Union of North America (the "Union") that it breached its statutory duty to fairly represent him in the processing of his wage grievance (Count V). Both defendants have moved for summary judgment.

Duane argues that plaintiff can not maintain an action under Section 301 for breach of the collective bargaining agreement because he has not exhausted the arbitration procedures available under the agreement. Plaintiff relies on the holding in *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), that "[an] employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance", and asserts the Union's failure to properly process his claim. Thus, the threshold issue with respect to Duane's motion for summary judgment directed to plaintiff's § 301 claim is whether the Union did breach the statutory duty it owed plaintiff. Since the Union raises the same issue by its motion for summary judgment on Count V, plaintiff's § 301 allegations can survive Duane's motion for summary judgment only to the extent that Count V can withstand the Union's challenge.

In support of its motion for summary judgment, the Union has submitted three affidavits with supporting documents which show that the following material facts are beyond dispute. On or about September 9, 1974, the Union presented to Duane a demand for arbitration of plaintiff's grievances. The arbitration process progressed to the selection of an arbitrator and the scheduling of a hearing. The Union through its counsel then three times requested plaintiff's counsel to arrange an interview with plaintiff in advance of the hearing. Plaintiff's counsel failed to answer and the Union wrote directly to plaintiff. Plaintiff's counsel responded to that request by letter dated March 26, 1975 stating that "[the union's] insistence on arbitration at this point is entirely inappropriate and unrealistic, in view of the fact that Mr. Melanson and the Building Wreckers Local 1421 are adversaries in the above-captioned proceeding [this action], and that the union's interest in the matters at hand now clearly conflict with that of Mr. Melanson." Plaintiff refused to participate in the arbitration proceedings, and on May 8, 1975 obtained a temporary restraining order from this court (Murray, J.) prohibiting further progress of the arbitration process.[1] Since issuance of the temporary restraining order, the Union has repeatedly advised representatives of the American Arbitration Association, before which the arbitration proceedings are pending, that plaintiff's grievances remain unresolved and that the Union stands ready to represent plaintiff at such time as the order may be dissolved and arbitration may resume.

Plaintiff asserts that material facts are in dispute. He points to a series of events during the two to three years preceding the Union's attempt to arbitrate plaintiff's grievances[2] and argues that in light of those events and in light of the fact that the Union demanded arbitration only after plaintiff filed charges against it with the National Labor Relations Board, questions remain as to the Union's willingness to represent plaintiff fairly.

■■■ "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discrim-

1. The temporary restraining order is still in effect, pending determination of the issues raised by the motions for summary judgment. *See Melanson v. John J. Duane Co., Inc.*, 605 F.2d 31, 34 (1st Cir. 1979).

2. Plaintiff relies on his deposition testimony that the Union's business manager, Arnold Rabinovitz, did not take up plaintiff's grievances with Duane even though plaintiff repeatedly asked him to do so. Initially, Rabinovitz counselled inaction, but on April 30, 1974, he announced to plaintiff that the Union would do nothing in his behalf because plaintiff "went and hired a lawyer". This declaration was allegedly punctuated by several obscenities. Plaintiff further states that for several years, Duane has pursued a practice of wage underpayments of which Rabinovitz must have been aware because he has been the Union's sole representative during the entire period of time. *In violation of obligations assigned to him by* the collective bargaining agreement, Rabinovitz allegedly has refused to admit eligible persons into the Union and has failed to appoint a Union steward for the Duane work sites.

inatory, or in bad faith." *Vaca v. Sipes, supra,* 386 U.S. at 190, 87 S.Ct. at 916. A union behaves arbitrarily toward an aggrieved union member if it ignores a meritorious grievance for no apparent reason or processes it with only perfunctory attention. *Vaca v. Sipes, supra,* 386 U.S. at 191, 87 S.Ct. at 917; *De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281 (1st Cir. 1970). Clearly, the Union did not ignore plaintiff's grievances, because it demanded arbitration in his behalf. Nor has plaintiff come forward with any facts to suggest that the Union has handled his arbitration demand in a perfunctory fashion. Since the demand was made in September 1974, the uncontroverted facts indicate diligent and energetic attention to the arbitration process by the Union while plaintiff appears to be the sole source of recalcitrance. The uncontroverted fact is that the Union has not by its conduct prevented plaintiff from exhausting his contractual right to present his unresolved grievances to an arbitrator, and has not in any way dishonored its statutory obligation. *See Cruz Soto Segarra v. Sea-Land Service and Local 1575,* Memorandum Op. No. 74–8076 (1st Cir. October 10, 1974); *Robbins v. George W. Prescott Publishing Co., Inc.,* 457 F.Supp. 915 (D.Mass.1978).

The pleadings, deposition, and affidavits do not, moreover, give rise to a rational expectation that the Union would participate in arbitration in bad faith or with a discriminatory or arbitrary attitude. While the conduct of Rabinovitz—at least at the meeting of April 30, 1974—may have been contrary to the "honest, informed, and reasoned" treatment contemplated by the fair representation standard, *See Baldini v. Local Union No. 1095,* 581 F.2d 145, 151 (7th Cir. 1978), plaintiff has not set forth any facts to even suggest that Rabinovitz' conduct has jeopardized plaintiff's rights under the collective bargaining agreement, *cf. Soto Segarra v. Sea-Land Service, Inc.,* 581 F.2d 291 (1st Cir. 1978). Nor does plaintiff set forth any facts which dispute the Union's affidavits that it has been thorough and diligent in pressing the arbitration demand, and that on two occasions, counsel for the Union has invited plaintiff's counsel to participate in the arbitration proceedings. Thus, even if true, plaintiff's allegations do not support the conclusion that the Union would prosecute his grievance with less than the commitment required of it as a fiduciary. *See Cruz Soto Segarra v. Sea-Land Service and Local 1575,* Memorandum Op., *supra.* The action under § 301 does not, therefore, lie against either defendant.

In addition, the allegations in Count I of unfair labor practices do not state a claim for which the courts can grant relief. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Count II is similarly defective. In that Count plaintiff claims that Duane paid him less than the statutory minimum overtime rate prescribed by the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), in that it paid him at less than one and one-half times the wage rate to which he claims he was entitled under the collective bargaining agreement, during the period from September 26, 1972 through March 29, 1974. That claim is thus wholly derivative from the underlying wage claim and falls because the wage claim falls. The derivative nature of the overtime claims thus distinguishes this case from the holding in *Abbott v. Beatty Lumber Co.,* 90 Mich.App. 500, 282 N.W.2d 369 (1979) that the exhaustion requirement under Section 301 does not bar an overtime claim under Section 207.

In Count III of his complaint, plaintiff alleges that he was defamed by Duane which "falsely and maliciously spoke and published of the plaintiff that he was an alcoholic and incapable of doing his job." Count IV claims damages based on the theory of intentional infliction of emotional distress. Plaintiff alleges that he suffered "frustration, anger, and humiliation" as a result of the discriminatory wage treatment and wrongful discharge to which he was allegedly subjected by Duane. Pendent jurisdiction of these state law claims depend upon the existence of a "federal claim [of] sufficient substance to confer subject

matter jurisdiction on the court" and of "a common nucleus of operative fact" from which both the federal and state law claims derive. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). But plaintiff's § 301 claim lacks sufficient substance to confer subject matter jurisdiction on this court. See pp. 240–241, *ante*. In addition, with respect to Count III, the pleadings and affidavits indicate that the alleged defamation constitutes a separate and distinct cause of action and does not derive from the same facts which form the basis either of plaintiff's § 301 allegations or the alleged § 207 violations. Thus, the jurisdictional parameters set forth in *Gibbs* preclude adjudication of the Count III defamation allegations and the claim for intentional infliction of emotional distress in Count IV.

Accordingly, the motions for summary judgment of both defendants are allowed.