**J.C. FARR and Glendell Green, etc., et al., Plaintiffs-Appellants Cross Appellees,**

v.

**H.K. PORTER COMPANY, INC., et al., Defendants-Appellees,**

**United Brick and Clay Workers of America, AFL–CIO, Defendant-Appellee Cross Appellant.**

No. 82–4247.

United States Court of Appeals, Fifth Circuit.

March 23, 1984.

John G. Corlew, Robert P. Krebs, Ransom P. Jones, Pascagoula, Miss., for plaintiffs-appellants cross appellees.

Peyton S. Irby, Jr., Barry K. Cockrell, Jackson, Miss., for defendants-appellees.

Robert H. Urann, New Orleans, La., for Aluminum, Brick and Clay Wkrs.

Jerry L. Gardner, Jr., Louis L. Robein, Jr., New Orleans, La., Larry M. Cole, Jersey City, N.J., for United Brick.

Before BROWN, REAVLEY and GARWOOD, Circuit Judges.

PER CURIAM:

This action under section 301 of the Labor Management Relations Act of 1947 (L.M.R.A.), 29 U.S.C. § 185, centers around H.K. Porter's two-part sale of a brickmaking plant in Pascagoula, Mississippi. In the District Court, the plaintiff class of employ-

ees contended that its former employer, H.K. Porter Co., Inc., breached its obligations under the collective bargaining agreement. The class also contended that the International Union (Aluminum, Brick, and Clay Workers, AFL–CIO) breached its duty of fair representation. The trial court found no liability on the part of the appellee employer, but assessed damages against the appellant International Union. The International Union appealed the finding of liability and the plaintiff class of employees (represented by J.C. Farr and Glendell Green) cross-appealed the finding of no liability for the employer.

Unfortunately, we are unable at this juncture to say whether the International Union, the initial employer or the former employees win or lose since our ruling on the statute of limitations requires a remand for a factual determination on that issue. Equally unfortunate, the reader must patiently await the description of underlying facts before we reach the critical limitations issue.

### How it All Began

During and prior to 1970, H.K. Porter Co., Inc. (Porter) operated a two-part brickmaking plant in Pascagoula, Mississippi. The first part was a "seawater" plant, which produced a raw material used in the manufacture of bricks. The second part, the brickmaking plant, actually manufactured the bricks. The two facilities were located on the same site, separated by a driveway which ran between them. The workers at both facilities were members of the United Brick & Clay Workers of America, AFL–CIO (Local 968) which entered into a collective bargaining agreement with Porter on October 1, 1970. The agreement bound Porter and its successors, heirs and assigns to a three-year term which was to expire on September 30, 1973.

On December 31, 1970, Porter contracted to sell the seawater plant to Corning Glass Works and its subsidiary, Corchem. Under the terms of the agreement, Corchem was to assume Porter's duties under the existing collective bargaining agreement. Takeover negotiations, to which representatives of Local 968 were privy, provided for the formation of a new local, 969, which would comprise Corchem's seawater plant employees. Local 968 remained the bargaining unit for the Porter employees still working the brick plant. Both locals agreed to be bound by the provisions of the collective bargaining agreement.[1]

Farr and Green, former officers of Local 968, dispute that the old local was afforded the opportunity to participate in these negotiations. Rather, they contend that the International Union selected certain Local 968 members who the Union knew would not dispute the outcome of the negotiations to represent Local 968 at the meeting. The representatives were subsequently hired by Corchem and thus became members of Local 969.

After the sale of the seawater plant was complete, Porter's continued operation of the brickmaking plant became economically unfeasible. In April of 1971, Porter began laying off its employees, and by June the plant had ceased production. In December 1971, Porter sold the brickmaking plant to Corhart, another Corning subsidiary. The sale agreement did not contemplate assumption of the collective bargaining agreement because after the plant closed, union members such as production and production or maintenance personnel were no longer employed by Porter.[2] Corhart used the brickmaking plant as a storage facility until February, 1974, when it reopened the plant

---

1. January 1971, Corchem specifically agreed to assume the collective bargaining agreement as it related to the seawater plant employees, and offered *all* members of Local 968 employment with Corchem on a one-time only basis according to seniority. Corchem also advised all of Porter's employees that there was a strong likelihood that Porter would close down the brick plant operation, and that Porter employ- ees would not be given another opportunity to apply for work at Corchem should they elect to stay on with Porter.

2. After the sale, one Porter supervisory employee stayed on at the plant to dispose of the remaining inventory.

and began producing a different type of brick than had previously been produced by Porter. Corhart spent $8,600,000 in converting the plant to the new process. Of the 54 employees Corhart hired to staff the "new" facility, only five were former Porter employees.

### The Litigation Begins

In April, 1974, the former officers and employees of Local 968 filed this lawsuit against Porter, Corhart, Corchem, Corning, Local 969 and the International Union. The plaintiff class, all former brick plant employees, contended that the failure to bargain over closure of the brick plant and its subsequent sale to Corhart constituted a breach of the collective bargaining agreement on the part of Porter and its successors. The class maintained that Nick Latner, a Porter employee, filed two grievances in early 1972 complaining that the successorship clause of the collective bargaining agreement had been violated. Although the grievances were directed to Porter as well as to Corning and its subsidiaries, Latner admitted that he had never mailed them to Porter. The class further alleged that the International Union and Local 969 breached their duties of fair representation in failing to protect the brick plant employees' rights following the events of 1971 and 1972. Both unions contend they never received notice of Latner's grievances.

### The Trial Court Acts

The District Court granted summary judgment dismissing the action against Corning and its subsidiaries, finding that they were not successor employers under the collective bargaining agreement with respect to the sale of the brick plant. The case then proceeded to a bifurcated trial with regard to the other defendants. In its opinion on liability, the District Court found

that the plaintiff class had failed to state any claim other than a cause of action under section 301 of the L.M.R.A., 29 U.S.C. § 185. The Court found no liability on the part of Porter for failing to negotiate the plant closure due to the absence of a timely and properly filed grievance in the record. Furthermore, Porter would not have been required to bargain with the Local over the *sale* of the brick plant because it was completely shut down prior to the sale. As to the defendant Local 969 (which consisted solely of seawater plant employees), the Court found that any liability on the part of the individuals who ratified the agreement separating the two locals could not be imputed to the entire membership. However, the Court held that the International Union was liable for gross negligence due to its failure to attempt negotiations with Porter concerning the brick plant employees' rights under the collective bargaining agreement, which by its terms did not expire until September 30, 1973. The Court found it "inconceivable" to think that the International Union was unaware that the brick plant employees still had rights subject to negotiation with Porter following the 1971 layoffs.

### At Long Last

### Statute of Limitations

Subsequent to oral argument in this case, the Supreme Court announced its opinion in *Del Costello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Court held that the six-month statute of limitations provided by section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160,[3] was applicable to section 301 fair representation/breach of collective bargaining agreement actions brought by employees against their employers or unions or both.

---

**3.** 29 U.S.C. § 160 empowers the National Labor Relations Board to prevent specified unfair labor practices that affect commerce. Subsection (b) provides, in pertinent part:

Whenever it is charged that any person has engaged in or is engaging in ... [an] unfair labor practice, the Board, or any agent or

agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint. ... *Provided,* That no complaint shall issue based upon any *unfair labor practice occur-* ring more than six months prior to the filing of the charge. . . .

In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Hines v. Anchor Motor Freight Co.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Supreme Court recognized that the usual requirement of exhaustion of labor grievances through internal or arbitral remedies was inapplicable to situations where the union representing the aggrieved employee breaches its duty of fair representation. While the suit against the employer rests on section 301 and is essentially an action for breach of the collective bargaining agreement, *Vaca* and *Hines* recognized that if the aggrieved employee also has a cause of action against the Union for failing to represent him, there is no longer any requirement that internal grievance remedies against the employer be exhausted. *See Del Costello, supra,* —— U.S. at ——, 103 S.Ct. at 2290 and n. 14, 76 L.Ed.2d at 489, *citing Vaca* and *Hines.* Thus, the employee, to succeed in such a "hybrid" action—whether he sues his employer, the Union, or both—must prove the cause of action against each.

The *Del Costello* Court found that in such a case, the rights asserted in the two causes of action were so similar and intertwined that the application of the same statute of limitations to both was proper. *Del Costello, supra,* —— U.S. at ——, 103 S.Ct. at 2294, 76 L.Ed.2d at 493. Previous cases which had applied different limitation periods to the two causes of action had resulted in inconsistent liability findings on essentially the same facts. *Id.*

■ Reasoning that these "hybrid" suits have "no close analogy" in state law from which a consistent statute of limitations might be borrowed, the Court held that the six-month period found in section 10(b) of the NLRA [4] better accommodated the "balance of interests" present in section 301/fair representation litigation. *Del Costello, supra,* —— U.S. at ——, ——, 103 S.Ct. at 2291, 2293, 76 L.Ed.2d at 489, 492. The Court thus limited its holding to this "hybrid" suit against both employer and union, distinguishing rather than overruling

precedent involving other types of section 301 suits. The state statute of limitations remains applicable, for example, in those cases which could be characterized properly as straight breach of contract actions such as *International Union of Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), where the borrowing of a state's six-year statute of limitations was upheld. *Hoosier,* unlike *Del Costello* or the instant case, involved only the Union's claim that the employer had breached the collective bargaining agreement by refusing to pay accumulated vacation salary to terminated employees. "Unlike the present case, Hoosier did not involve any agreement to submit disputes to arbitration, and the suit was brought by the Union itself rather than the individual employee." *Del Costello, supra,* —— U.S. at ——, 103 S.Ct. at 2289, 77 L.Ed.2d at 487.

■ We find that the instant case is not the "straightforward" breach of contract action contemplated in *Hoosier,* but is instead the hybrid *Vaca-Hines* variety. Because we have held that an applicable section 10(b) statute of limitations should be applied retroactively to suits filed before *Del Costello, Edwards v. Sea-Land Service, Inc.,* 720 F.2d 857, 862 (5th Cir.1983), we find that the six-month statute of limitations is applicable to this case. *See also Perez v. Dana Corp., Parish Frame Division,* 718 F.2d 581, 588 (3d Cir.1983). A determination that the six-month period had elapsed prior to the time suit was filed in April, 1974, would therefore bar the plaintiffs from further asserting these claims against Porter and the International Union.

■ We are in agreement with the Eleventh Circuit in holding that "[f]or the purpose of determining when a § 10(b) period begins to run, we look to when the plaintiffs either were or should have been aware of the injury itself, not to when the plaintiffs became aware of one of the injury's many manifestations." *Benson v. General Motors Corp.,* 716 F.2d 862, 864 (11th Cir. 1983) (application of *Del Costello* ruling to suit against employer and union, remand

---

**4.** *See* text of footnote 3, *supra.*

for determination of when period of limitations began to run). *See also NLRB v. Auto Warehousers, Inc.,* 571 F.2d 860, 864–65 (5th Cir.1978). Because both *Del Costello* and *Edwards* were decided subsequent to oral argument in this case, the parties have neither briefed nor argued factual questions such as when the "injury" actually occurred and when the plaintiffs became aware of it for purposes of the statute of limitations. Further, we find no such factual determination in the record before us.[5] Finally, the District Court had no occasion to consider any legal defenses to the running of the six-month period.

The judgment of the District Court is therefore vacated and remanded for a determination in accordance with this opinion. If the District Court finds as a matter of law or a matter of fact that the period of limitations had expired at the time the suit was filed,[6] the Court is instructed to enter judgment in favor of the Union and H.K. Porter.

VACATED and REMANDED with Instructions.

---

**5.** Although the International Union in its answer raised the bar of laches as an affirmative defense, it apparently did not press the claim. The District Court therefore made no factual finding as to when the plaintiffs' cause of action accrued.

**6.** We of course intimate no opinion at this juncture as to the merits of the plaintiffs' claims against either Porter or the International Union.