Richard GARCIA, et al.,
Plaintiffs-Appellants,

v.

EIDAL INTERNATIONAL CORPORA-TION, a foreign corporation; Jencor International Corporation, a foreign corporation; and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, Local Lodge No. 338, a labor organization, and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO, labor organization, Defendants-Appellees.

No. 84–2255.

United States Court of Appeals,
Tenth Circuit.

Dec. 30, 1986.

Rehearing Denied March 12, 1987.

Douglas G. Voegler of Marchiondo & Berry, P.A., Albuquerque, N.M. (H. Richard Blackhurst, Albuquerque, N.M., with him on brief), for plaintiffs-appellants.

Joseph L. Werntz (Terry D. Farmer with him on brief) of Moses, Dunn, Beckley, Espinosa & Tuthill, Albuquerque, N.M., for defendant-appellee Eidal International Corporation.

Thomas H. Marshall of Blake & Uhlig P.A., Kansas City, Mo. (Gerlad R. Bloomfield of Kool, Kool, Bloomfield & Hollis, P.A., Albuquerque, N.M., and Robert L. Dameron of Blake & Uhlig P.A., Kansas City, Kan., on brief), for the Union defendants-appellees.

Before McKAY, SEYMOUR, and MOORE, Circuit Judges.

SEYMOUR, Circuit Judge.

A number of former employees of Eidal International Corporation brought suit against Eidal, Jencor International Corporation, and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, AFL–CIO, and its affiliate, Local Lodge No. 38 (the union). The district court granted defendants' motion to dismiss on the ground that the suit was time barred under *Del-Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76

L.Ed.2d 476 (1983). We reverse and remand, concluding that the holding of *Del-Costello* does not extend to cases in which an employer has repudiated all of its obligations under a bargaining agreement, including the duty to arbitrate.

### I.

In considering a motion to dismiss for failure to state a claim, the pleadings should be liberally construed, all well-pleaded factual allegations must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). So construed, the amended complaint in this case alleges the following facts.

The terms and conditions of plaintiffs' employment with Eidal were governed by a collective bargaining agreement between Eidal and the union. In July 1982, one year after the bargaining agreement was signed and two years before it was to expire, Eidal notified its employees that the business had been sold to Jencor. A letter from Eidal's chairman announced the sale, discharged all of the company's employees, mentioned certain termination benefits, and referred the workers to Jencor for possible rehiring. Eidal did not transfer the bargaining agreement to Jencor, which installed a new work force on less favorable terms. Only a few former Eidal employees were rehired.

Eighteen months after the sale was announced, plaintiffs filed this action against Eidal, Jencor, and the Union under section 301 of the National Labor Management Relations Act (NLMRA), 29 U.S.C. § 185 (1982). Plaintiffs contended that the sale was a sham, that Jencor was merely Eidal's alter ego, and that Eidal had repudiated the collective bargaining agreement by acting for the sole purpose of evading its contractual obligations. Plaintiffs further asserted that Eidal wrongfully discharged them in connection with the transaction. Plaintiffs also alleged that the union had violated its duty of fair representation because it failed to challenge the propriety of the transaction, failed to inform its members about the sale, and signed a pre-hire agreement with Jencor that the National Labor Relations Board (NLRB) later nullified. The complaint charges that Eidal acted unilaterally in severing all relations under the bargaining agreement, although it also alleges that the union acquiesced. Plaintiffs also asserted several violations of state law.

The district court granted defendants' motion to dismiss the action as time barred. The court characterized plaintiffs' lawsuit as a hybrid action within the meaning of *DelCostello,* declined to exercise its jurisdiction over the pendent state law claims, and dismissed the complaint. Plaintiffs appeal, contending that because Eidal wholly repudiated the collective bargaining agreement, including its duty to arbitrate, the suit is governed by the state limitations period for breach of contract, and that *DelCostello* is inapposite.

### II.

No federal statute of limitations is specifically provided for section 301 actions. *DelCostello,* 462 U.S. 151, 103 S.Ct. 2281 established that the six-month statute of limitations contained in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1982) (NLRA), governs a hybrid action, i.e., an action in which an employee may sue both his employer and the union because the union has undermined the grievance and arbitration process by violating its duty to fairly represent the employee. The timeliness of plaintiffs' claims against Eidal turns on whether the company's alleged repudiation of the bargaining agreement makes the case more closely analogous to an action on a contract than to a typical hybrid claim governed by *DelCostello.*

### A.

In order to determine the proper characterization of this action, it is helpful to review the line of cases culminating in *Del-Costello.* The seminal case of *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86

S.Ct. 1107, 16 L.Ed.2d 192 (1966), involved a section 301 suit for breach of a collective bargaining agreement by an employer. The claim in *Hoosier* resembled a straightforward action on a contract; there was no requirement to arbitrate and the union sued directly on the bargaining agreement. The Court concluded that under these circumstances, the timeliness of the suit was to be governed by applying the most appropriate state statute of limitations. In deciding not to apply a uniform federal rule of timeliness to such actions, the Court emphasized that national uniformity is relatively unimportant when an issue does not implicate "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes under it." *Id.* at 702, 86 S.Ct. at 1111. *Hoosier* reserved the question whether different types of section 301 actions might necessitate different rules of timeliness. *See id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7.

Subsequent cases wrestled with various issues involving section 301 suits. The Court allowed individual employees as well as unions to sue their employers for breach of a bargaining agreement, *Smith v. Evening News Association*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), but required them to exhaust contractually mandated grievance and arbitration procedures, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), and to abide by finality provisions contained in the agreement, *see W.R. Grace & Co. v. Local Union 759, International Union of Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). If, however, a union undermined the grievance and arbitration process by violating its duty of fair representation, an employee could sue both employer and union irrespective of the finality

or outcome of those proceedings. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567–71, 96 S.Ct. 1048, 1057–59, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *see also DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290. These so-called hybrid actions differ significantly from cases like *Hoosier*. In a hybrid action, an employee suing his employer for breach of a bargaining agreement can advance that claim only if he also prevails on a decidedly non-contractual claim against his union. *See United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62–63, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981). The two claims are inextricably linked, and are a creation of federal labor law that lacks any close analogy in state law. Unlike *Hoosier*, such hybrid actions directly challenge the private resolution of disputes under the grievance and arbitration procedures provided for in most bargaining agreements. *See DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

As explained in *DelCostello*, an appropriate limitations period for hybrid cases must be long enough to allow employees to vindicate their rights effectively, yet short enough to ensure "the relatively rapid resolution of labor disputes favored by federal law." *See* 462 U.S. at 168, 103 S.Ct. at 2292. Because of the unique nature of hybrid cases, the usual practice of seeking analogies in state law proved unsuccessful in fulfilling these federal objectives.[1] Recognizing that a uniform standard was needed, the Court in *DelCostello* responded by adopting the six-month statute of limitations contained in section 10(b) of the NLRA. *Id.* at 169–72, 103 S.Ct. at 2293–95; *see generally Jones v. Consolidated Freightways Corp.*, 776 F.2d 1458, 1462 (10th Cir.1985). In so doing, however, the Court reaffirmed that "resort to state law

---

**1.** In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Court applied a 90–day state limitations period for vacation of a commercial arbitration award to an employee's lawsuit against his employer. In *DelCostello*, the Court noted that this choice would resolve labor disputes quickly, but

at the cost of denying relatively unsophisticated employees adequate time in which to sue. *See* 462 U.S. at 165–66, 103 S.Ct. at 2291. The Court added that an employee's claim against his union in no way resembled an action to vacate an arbitration award. *See id.* at 166–67, 103 S.Ct. at 2291–92.

remains the norm for borrowing of limitations periods." *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294.

### B.

This case is superficially similar to a hybrid action. Plaintiffs are suing both their employer and their union. Additionally, the bargaining agreement contains a comprehensive grievance and arbitration clause, which applies to all disputes "as to the meaning or application of any provisions" of the agreement. *See* rec., vol. I, at 22. Considering that the signatories evinced no intention to exclude controversies arising from transactions such as the one involved in this action, arbitration would ordinarily be appropriate. *See AT & T Technologies, Inc. v. Communication Workers*, — U.S. —, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

■ In one crucial respect, however, this case is distinguishable from a typical hybrid action, and more analogous to a contract action, as in *Hoosier*. Plaintiffs allege that Eidal repudiated the grievance and arbitration process as part of its unilateral effort to evade an undesirable bargaining agreement. The notion of a sham transaction, in the sense of being both covert and in bad faith, implies a determination to repudiate the contract and thereby avoid arbitration.[2] This contract claim in no way depends upon proof concerning "the nature of the union's discharge of its duty of representation." *See Gould, Inc. v. Adams*, 469 U.S. 1122, 105 S.Ct. 806, 808, 83 L.Ed.2d 799 (White, J., joined by Brennan and Powell, JJ., dissenting from denial of certiorari). Because Eidal allegedly acted unilaterally, its potential liability to these plaintiffs is properly viewed as distinct from that of the union. *Cf. Mitchell*, 451 U.S. at 62–63, 101 S.Ct. at 1563–64. A defendant employer should not be permitted to characterize as a "hybrid action" what is essentially a contractual claim simply because the union has acquiesced in the breach. In the present case, any union complicity does no more than explain why plaintiffs have sued individually. In sum, if the complaint adequately states a claim of contract repudiation, then plaintiffs' section 301 claim against Eidal and Jencor may be properly analogized to an action on a contract, and the appropriate state limitations period should be applied.

### C.

■ In *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914, the Court made clear that individual employees may sue their employer directly for breach of a bargaining agreement if the employer has effectively repudiated the grievance and arbitration process.

"An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. Cf. *Drake Bakeries, Inc. v. Local 50, Am. Bakery, etc., Workers*, 370 U.S. 254, 260–263, 82 S.Ct. 1346, 1350–1352, 8 L.Ed.2d 474. See generally 6A Corbin, Contracts § 1443 (1962). In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action."

*Id.* "[I]n determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important." *Drake Bakeries, Inc. v. Local 50, American Bakery*, 370 U.S. 254, 262–63, 82 S.Ct. 1346, 1351, 8 L.Ed.2d 474 (1962). An employer's repudiation may

---

**2.** An employer's repudiation of the grievance and arbitration process can also constitute an unfair labor practice within the jurisdiction of the NLRB. Such a violation, however, does not make the employer's conduct any less a breach of a collective bargaining agreement, which is actionable under § 301. *See United Steelworkers v. New Park Mining*, 273 F.2d 352, 357–58 (10th Cir.1959); *see also Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 101 n. 9, 82 S.Ct. 571, 575, n. 9, 7 L.Ed.2d 593 (1962). In this case, moreover, Eidal's repudiation cannot be separated from the alleged substantive breach.

take the form of either an express refusal to abide by contractually established grievance and arbitration machinery, *see, e.g., Boone v. Armstrong Cork Co.,* 384 F.2d 285, 289 (5th Cir.1967), or conduct which renders the employer unable or apparently unable to comply, *cf.* Restatement (Second) of Contracts § 250(b) & comment c (1979). Substantive breaches of a bargaining agreement do not necessarily imply a concommitant refusal to arbitrate over the propriety of the alleged breach. *See Drake Bakeries,* 370 U.S. at 262, 82 S.Ct. at 1351; *Robbins v. George W. Prescott Publishing Co.,* 457 F.Supp. 915, 921 (D.Mass.1978). A plaintiff must show some specific basis for believing that the breaching party would not submit the matter to arbitration, and conclusory allegations will not fulfill this requirement, *see Robbins,* 457 F.Supp. at 922.

■ Plaintiffs allege that Eidal notified its employees of the sale to Jencor only after its consummation. They allege that Eidal proceeded unilaterally and covertly, in order to undermine the bargaining agreement. The announcement of a completed transaction deprived plaintiffs of recourse to arbitration before the sale. The July 1982 letter effectively announced an end to all contractual relations. Although this letter does not specifically disclaim the duty to arbitrate, its indication that the contract no longer existed supports an inference of repudiation. *See Kaylor v. Crown Zellerbach, Inc.,* 643 F.2d 1362, 1366 (9th Cir.1981); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 875 (3d Cir.1972). Moreover, Eidal did not transfer the bargaining agreement to Jencor, which signed a pre-hire agreement with the union and installed a new workforce on quite different terms. The complaint further alleges that the purported change in ownership from Eidal to Jencor was a sham, and that the two companies are actually the same employer.[3] These allegations describe with sufficient particularity a sham transaction that constitutes a repudiation.

### D.

This case does not implicate the policy concerns which warranted the borrowing of a federal rule of timeliness in *DelCostello.* "A *Vaca v. Sipes* suit normally involves an issue that is intertwined with the day-to-day relationship between management and labor." *Adams v. Gould, Inc.,* 739 F.2d 858, 867 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). *Vaca, Hines, Mitchell,* and *DelCostello* all involved the allegedly wrongful discharge of individual employees within the context of an otherwise established and continuing relationship between management and labor. "Speed and finality in the resolution of disputes are the most relevant policies in those situations." *Id.* This case, in contrast, involves not only an alleged unilateral repudiation of the grievance and arbitration process, but a severance of all existing contractual relations. When the contract has been completely repudiated and the employer has closed down its business, the labor law policies that persuaded the Court in *DelCostello* to adopt the uniform six-month statute of limitation are not applicable.[4]

---

3. Eidal argues that under a management prerogative clause it had the right to relocate or close its business, provided that notice and an opportunity for discussion was first provided to the union. Plaintiffs essentially counter that it would be a breach of an implied duty of good faith and fair dealing to sell the business for the sole purpose of evading Eidal's obligations under the bargaining agreement. *See New Park Mining Co.,* 273 F.2d at 357. Given the allegations of a sham transaction and repudiation of the contract, there are clearly fact issues which prevent the assumption that the company did not breach the bargaining agreement.

4. *Farr v. H.K. Porter Co.,* 727 F.2d 502 (5th Cir.1984), the strongest case relied upon by defendants, does not indicate otherwise. In *Farr,* the court applied § 10(b)'s limitation period to employee claims against H.K. Porter and the local union for failure to negotiate over the sale of a brickmaking plant. Unlike Eidal, Porter never repudiated. The transaction instead took place in the context of an open and continuing relationship. The plaintiffs could assert only that the sale was mishandled by the employer and union working in conjunction, not that contractual relations had broken down at the employer's instigation. *H.K. Porter* was decided after a full trial on the merits. It would be

## III.

The district court dismissed as time barred the federal claims contained in Counts I–III of plaintiffs' complaint, and declined to exercise discretionary jurisdiction over the pendent state law claims contained in Counts IV–VI.

Count I states plaintiffs' primary basis for relief: breach of the collective bargaining agreement. For the reasons stated in Part II of this opinion, the district court erred in holding on the basis of the pleadings that this claim is sufficiently analogous to a hybrid action to warrant the application of the federal six-month statute of limitations under *DelCostello*. If upon development of the facts it is established that the contract was not repudiated as alleged, then the six-month limitations period will apply. Otherwise, the case is governed by the most analogous New Mexico statute of limitations.

■ Count II charges the union with violating its duty of fair representation by, among other things, failing to protect the rights of the parties in connection with the sale. The parties in this case have addressed only the analogy between plaintiffs' section 301 claims against Eidal and Jencor, and the facts of *Hoosier* versus those of *DelCostello*. No party has briefed or argued the timeliness of an independent claim against the union. Moreover, like the Count I claim, the applicable statute of limitations governing this claim may depend on the facts. We therefore decline to decide what limitations period is applicable to Count II, and we remand this issue for an initial decision by the district court.

■ Count III asserts that Eidal wrongfully discharged its employees. The complaint contends that these terminations helped implement Eidal's plan to evade the bargaining agreement. This alleged link with the breach of contract described in Count I indicates that these wrongful discharge claims should not be viewed as sub-

premature to dismiss this action when plaintiffs' allegations concerning contract repudiation

ject to section 10(b)'s limitations period. Even those workers who were discharged before the sale to Jencor allegedly had no firm basis for objecting until they realized that the transaction was a sham and that Eidal had repudiated the contract. The timeliness of Count III is therefore governed by our analysis of Count I.

■ Counts IV–VI seek relief under New Mexico law. The district court declined to exercise jurisdiction over these counts in the absence of any timely claim under federal law. Having reinstated plaintiffs' federal claims, we also reverse the dismissal of plaintiffs' state law claims. On remand, the district court retains the discretion to decline jurisdiction if it again becomes warranted during the course of litigation. *See* 13B C. Wright & A. Miller, Federal Practice and Procedure § 3567.1, at 142–43 & n. 31 (2d ed. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

## IV.

The judgment of the district court dismissing the complaint is reversed and the case is remanded for further proceedings consistent with this opinion.

must be accepted as true.