581 F.2d 291
 99 L.R.R.M. (BNA) 2198, 84 Lab.Cas. P 10,795
 Cruz SOTO SEGARRA, Plaintiff, Appellee,
v.
SEA-LAND SERVICE, INC., Defendant, Appellee.
Appeal of I. L. A., LOCAL 1575, AFL-CIO, Defendant.
Cruz SOTO SEGARRA, Plaintiff, Appellee,
v.
I. L. A., LOCAL 1575, AFL-CIO, Defendant, Appellee.
Appeal of SEA-LAND SERVICE, INC., Defendant.
 Nos. 78-1047, 78-1048.
 United States Court of Appeals,
First Circuit.
 Argued June 9, 1978.
Decided Aug. 11, 1978.
 
 1
 Nicolas Delgado Figueroa, Santurce, P. R., for appellant, International Longshoremen's Ass'n, Local 1575, AFL-CIO.
 
 
 2
 Radames A. Torruella, San Juan, P. R., with whom Reinaldo Ramos Callazo, and McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., were on brief, for appellant, Sea-Land Service, Inc.
 
 
 3
 Demetrio Fernandez, Rio Piedras, P. R., on brief, for appellee, Cruz Soto Segarra.
 
 
 4
 Before CAMPBELL and BOWNES, Circuit Judges, and PETTINE, Chief District Judge.*
 
 
 5
 PETTINE, Chief District Judge.
 
 
 6
 This seemingly ancient litigation involves the discharge of appellee Cruz Soto Segarra by his employer, appellant Sea-Land Service, Inc. on December 12, 1968 and the subsequent failure by appellant Local 1575 of the International Longshoremen's Association to process appellee's grievance. The suit for damages initiated by the discharged employee in a Commonwealth of Puerto Rico court was removed to federal district court with jurisdiction premised on 29 U.S.C. § 185 (1970). The district judge found that Local 1575 had breached its duty of fair representation by its arbitrary, discriminatory and bad faith failure to process Soto Segarra's grievance and awarded appellee $30,000 in "mental damages" plus attorney's fees. As a consequence of the court's finding that appellee had sufficiently attempted to exhaust the grievance mechanism provided in the collective bargaining agreement, the federal suit was also maintainable against the employer to redress the discharge claimed to be in violation of the collective bargaining agreement. The court below found that the evidence did not support the employer's version of the incident that formed the basis of the discharge and, therefore, the discharge was a breach of the collective bargaining agreement. The district judge awarded back pay and ordered reinstatement. The judge's findings and the amount and type of relief are now before us on appeal.
 
 I. FACTS
 
 7
 Soto Segarra had worked as a stevedore for Sea-Land or its predecessor from 1958 until the time of discharge. He was a member of the union until his expulsion in 1964. Thereafter, he became a leading critic of the Local, focusing particularly upon its management of pension fund monies. At the time of the discharge the Local had been placed under a trustee by the International pending a fraud investigation. Without doubt, Soto Segarra and the officials of the Local harbored an intense animosity toward and distrust of one another.
 
 
 8
 The incident that prompted Soto Segarra's discharge took place on December 11, 1968. A Sea-Land supervisor had instituted a new policy regarding notice prior to quitting work early on a given day. Soto Segarra and a fellow worker went to Sea-Land's office to protest the policy as inconsistent with the bargaining process and agreement. Sea-Land charged that Soto Segarra's protest grew loud, profane, offensive and physical, to the point where a policeman was ultimately called to remove the protesters. Immediately afterwards. Soto Segarra was not called for work that afternoon with the gang of other senior stevedores. According to Sea-Land, a brief work-stoppage ensued at Soto Segarra's instigation. The following day, Sea-Land, by letter dated December 12, informed Soto Segarra and the Local that he was suspended without pay pending a hearing.
 
 
 9
 Although no longer a member of the union, Soto Segarra was still covered by the bargaining agreement and subject to its provision for exclusive representation by the union in grievance and arbitration proceedings. Consistent with the agreement, therefore, by certified letter mailed December 13, Soto Segarra requested the Local to process his discharge grievance. Despite denial, it appears that the letter was received by the Local agent on December 19. On December 16, by letter addressed to a Sea-Land supervisor, Soto Segarra requested a meeting with Sea-Land to discuss his discharge "with the assistance of my attorney."
 
 
 10
 Appellee received no response to either letter, even though the deadlines for processing grievances as specified in the collective bargaining agreement had expired. He appointed a committee of three coworkers to represent him. According to uncorroborated trial testimony, one of the three approached the Local and requested that it initiate the grievance process, but the Local's agent refused. The company also refused to negotiate with the committee without at least an opportunity for the union to be present.
 
 
 11
 Faced with Sea-Land's refusal to meet on January 20, 1969, Soto Segarra again addressed a written request for a grievance hearing to the Local but, at the same time, implied that his committee would be present. This letter received a prompt response from the Local, which offered to process his grievance but on the condition that the union, not Soto Segarra, select his representative at the grievance hearing, as provided in the collective bargaining agreement.
 
 
 12
 In February, the exchange of letters and telegrams continued between the Local and Soto Segarra's attorney, with only partial agreement on the selection of a representative. Soto Segarra then took his cause to International officials who contacted both Sea-Land and the Local and urged Soto Segarra's reinstatement.
 
 
 13
 Contradictory testimony was introduced with regard to whether the Local ever did in fact attempt to raise Soto Segarra's claim before an informal meeting of the grievance committee in May. The trial judge believed appellee that no such meeting or attempt actually occurred. Appellee's final letter to the Local, dated May 10, 1969, requested a meeting with the Local representative in the presence of the vice-president of the International in an effort to quickly resolve his discharge. To this letter he received no response.
 
 
 14
 On June 3, 1969, appellee filed charges of unfair labor practices against Sea-Land and the Local with both the national and local labor relations boards. Both agencies refused to issue complaints.[1] Appellee then filed the present action in early September, 1969.
 
 
 15
 II. EXHAUSTION OF THE GRIEVANCE PROCEDURE: LOCAL'S BREACH OF
 
 DUTY OF FAIR REPRESENTATION
 
 16
 An aggrieved employee covered by a collective bargaining agreement which provides exclusive remedies for breaches of that agreement, must attempt to exhaust those contractual remedies before initiating suit. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Republic Steel v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Failure to exhaust is excused if the union, by breach of its duty of fair representation, prevented the employee from exhausting those remedies. Vaca v. Sipes, supra, 386 U.S. at 184-86, 87 S.Ct. 903; De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 283 (1st Cir.), Cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970). That duty of fair representation is breached if the union treats the grievance in an arbitrary, discriminatory or bad faith manner. For example, the union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion". Vaca v. Sipes, supra, 386 U.S. at 190-91, 87 S.Ct. at 917.
 
 
 17
 Both appellants characterize their posture in these exchanges as willing at all times to follow the grievance mechanism as provided in the bargaining agreement but that appellee either passively or actively resisted by his constant attempts to secure representation of his own choosing. In contrast, appellee insists that these exchanges evidence both his repeated efforts to exhaust the grievance procedure and the Local's silent refusal and continuing failure to take any action. The trial judge adopted appellee's view.
 
 
 18
 This Court has had previous occasion to instruct appellee Soto Segarra with regard to when attempts to exhaust are sufficient to permit side-stepping the grievance mechanism provided by the bargaining agreement. In two other decisions involving a wage claim grievance brought by Soto Segarra, this Court found in accordance with the district court that Soto Segarra's efforts were wanting. In the first case, Cruz Soto Segarra v. Sea-Land Service and ILA, Local 1575, Memorandum Op. No. 72-1032 (1973), Soto Segarra made no demand on the union to initiate grievance procedures. The Court rejected the proffered justification that the Local's failure to process the discharge grievance involved in the instant matter and Soto Segarra's non-union status excused any attempt to obtain union assistance. Soto Segarra brought a second suit when the union, following its offer to process his grievance, failed to take any positive action. However, this Court again agreed with the district court, Cruz Soto Segarra v. Sea-Land Service and ILA, Local 1575, Memorandum Op. No. 74-8076 (1974), that appellee's own failure to follow up on the Local's offer to meet with him to prepare his case constituted insufficient exhaustion. Grievance proceedings were still available to him and there was no reason to anticipate that the union would not fairly represent him despite their mutual hostility.
 
 
 19
 Contrary to the previous case, it was the union in the instant matter who failed to respond to appellee's request to process his grievance until a second request was made some 40 days later, well after the expiration of the 12-day period specified in the collective bargaining agreement. Appellee's final letter also received no reply even though, as the letter stressed, appellee was suffering extreme hardship from his prolonged unemployment. The Local's silence was matched by their inaction. No evidence even remotely indicated that the union's failure to process the grievance was based on an investigation and evaluation of the merits. See, e. g., Ruzicka v. General Motors Corp., 523 F.2d 306, 310 (6th Cir. 1975). Although the Local was not obligated to accept appellee's conditions that were contrary to the collective bargaining agreement, on a number of occasions appellee addressed unconditional requests to process his grievance and received no response. Thus, the district court could properly find that the union breached its duty of fair representation by "arbitrarily ignor(ing) a meritorious grievance", Vaca v. Sipes, supra, 386 U.S. at 191, 87 S.Ct. 903.
 
 
 20
 For appellee's part, while not all his efforts were in a truly cooperative spirit, he did not sit idly by but instead persistently beseeched officials on the local and international level to process his grievance. Since appellee was not a union member, he was not bound by contract with the union to exhaust any formal internal union appeals before resorting to a judicial forum. Compare with Harrison v. Chrysler Corp., 558 F.2d 1273 (7th Cir. 1977); Ruzicka v. General Motors Corp., supra, 523 F.2d at 311-12; Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local 14, 453 F.2d 1018 (9th Cir. 1972); Brady v. Trans World Airlines, 401 F.2d 87, 104 (3d Cir. 1968), Cert. denied, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969) (all cases involved union members). Even if the strong federal policy favoring the dispute resolution mechanism provided in the bargaining agreement might require a non-union member to give the union a further opportunity to correct its breach and proceed with the grievance process, See Harrison v. Chrysler Corp., supra, 558 F.2d at 1278-79, appellee's six-month letter writing campaign provided the union with many adequate opportunities. See Ruzicka v. General Motors Corp., supra, 523 F.2d at 311-12; Peterson v. Rath Packing Co., 461 F.2d 312, 315-16 (8th Cir. 1972); Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local 14, supra, 453 F.2d at 1027-28. The union's initial silence and continuing inaction necessarily confirmed appellee's suspicion that the union would be less than vigorous in his defense. In contrast to the previous case involving a wage claim, as to the discharge grievance the Local shared a common interest with the employer to be rid of their most outspoken critic.
 
 
 21
 Finally, unlike the previous cases, the court below found appellee had sufficiently attempted to exhaust the grievance procedure but was thwarted by the Local's breach of its duty of fair representation. This finding turned in large measure on historical fact, credibility of witnesses and inferences. A trial court's findings of fact can only be overturned if clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. See Petersen v. Rath Packing Co., supra, 461 F.2d at 316.[2] Although the net import of the intercourse between the parties is quite ambiguous, the district court's findings of bad faith discrimination[3] and arbitrary refusal to process the grievance find support in the record.
 
 
 22
 III. DISCHARGE IN VIOLATION OF COLLECTIVE BARGAINING AGREEMENT
 
 
 23
 The district court appropriately proceeded to the merits of appellee's claim for wrongful discharge, rather than referring appellee's claim to the contract grievance procedure. Nearly ten years have passed since the dispute arose. It is high time that appellee receive a decision on the merits of his discharge. Accord Ruzicka v. General Motors Corp., supra, 523 F.2d at 315.
 
 
 24
 Mindful of the very narrow scope of appellate review of the district court's findings of fact, we affirm its determination that the alleged grounds for discharge were not established by Sea-Land's evidence. In the context of dealings between employee and supervisor, particularly in the stevedoring trade where less than genteel dialogue is commonplace, the district court's finding that the incident in the office amounted to no more than a "normal discussion" is not clearly erroneous.
 
 IV. RELIEF
 
 25
 In awarding back pay of $67,250, the district court apparently multiplied the salary appellee received in 1968 by the number of months between his discharge and termination of the trial. No adjustment for subsequent salary increases was calculated. The district court also made no inquiry or finding as to whether appellee had made reasonably diligent efforts to mitigate the damages by seeking substantially equivalent employment during the many years since his discharge. NLRB v. Madison Couriers, Inc., 153 U.S.App.D.C. 232, 472 F.2d 1307 (1972); De Arroyo v. Sindicato de Trabajadores Packinghouse, supra, 425 F.2d at 282; See also Schneider v. Electric Auto-Lite Co., 456 F.2d 366, 373 (6th Cir. 1972); NLRB v. Mastro Plastics Corp.,354 F.2d 170, 174 n. 3 (2d Cir. 1965), Cert. denied, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). Appellee testified as to his generally unsuccessful efforts to secure employment and also to his work as a "private server" during this period. However, the district court did not reduce his gross back pay to reflect any interim income he was able to earn as a "server" in place of his work at Sea-Land. See St. Clair v. Local 515, International Brotherhood of Teamsters, 422 F.2d 128, 132 (6th Cir. 1969). Finally, appellee suffered a severe heart attack that prompted a two-year suspension of the trial of this case. Yet the district court did not adjust the damages to reflect what he would have earned, if anything, in the way of disability pay instead of full salary had he been still employed by Sea-Land at the time of his heart attack, nor, indeed, was inquiry made as to whether for other reasons appellee's employment by Sea-Land would have been curtailed in normal course. See De Arroyo v. Sindicato de Trabajadores Packinghouse, supra, 425 F.2d at 291 n. 13. Ideally, the award of back pay should place appellee in the economic position he would have achieved had the wrongful discharge never occurred. Rivera Morales v. Benitez de Rexach, 541 F.2d 882, 886 (1st Cir. 1976). The district court's award fails to achieve that end.
 
 
 26
 Although appellee did not seek reinstatement, the district court nevertheless ordered it because calculating future lost earnings was too speculative. This Court held in De Arroyo, supra, 425 F.2d at 292, that reinstatement was an alternative remedy but that the difficulty in quantifying future lost earnings did not automatically require resort to the more drastic remedy of reinstatement. Moreover, reinstatement is only appropriate where not impractical. Id. In light of the lapse of ten years, the possible permanent alteration of appellee's physical condition as a result of his heart attack and appellee's request only for damages, substantial evidence and a more specific finding by the trial court that reinstatement is necessary, desired and practical is required to support the district court's order. We accordingly vacate and remand for reconsideration of both the back pay award and reinstatement order.
 
 
 27
 Finally, the award of $30,000 for "mental damages" against the union cannot stand.
 
 
 28
 In Vaca v. Sipes, supra, the Supreme Court instructed the trial judge:
 
 
 29
 to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer. In this case, even if the Union had breached its duty, all or almost all of Owens' damages would still be attributable to his allegedly wrongful discharge by Swift. 386 U.S. at 197-98, 87 S.Ct. at 920.
 
 
 30
 Consistent with Vaca, this Court held that where there is no allegation that the union participated in the improper discharge or evidence that, but for the union's conduct, the employee would have been reinstated earlier, no part of the back pay award is chargeable to the union. De Arroyo v. Sindicato de Trabajadores Packinghouse, supra, 425 F.2d at 290. In the instant case, the district court did not charge the union for any of the back pay due appellee but instead awarded $5,750 in attorney's fees proximately caused by the union's failure to process his grievance. Id. at 292-93; See Czosek v. O'Mara, 397 U.S. 25, 29, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). The fees award is not appealed.
 
 
 31
 However, the Local does appeal the award of $30,000 for mental distress. Compensation for mental distress in the context of labor disputes is warranted only in the "exceptional" case of "extreme" misconduct. De Arroyo v. Sindicato de Trabajadores Packinghouse, supra, 425 F.2d at 293. Only the rather conclusory finding[4] that the union intentionally discriminated against appellee based on his non-union status and his criticism of the union comes close to that "extreme" conduct. The union's discriminatory treatment here, however, pales by comparison to that in Richardson v. Communication Workers of America, 443 F.2d 974, 983 n. 12 (8th Cir. 1971), relied upon by the district court. In Richardson, the non-union grievant was subject to many months of constant verbal and serious physical abuse. No evidence in the record suggests that appellee suffered through a similar reign of terror. Nor did the district court find that the union had in any way encouraged or participated in Sea-Land's wrongful discharge, as appeared in Richardson. Appellee's often contradictory communications with the union make it difficult to conclude that the failure to process appellee's grievance, although arbitrary, was also clearly malicious and wilful. Not every default by the union that constitutes a breach of its duty of fair representation necessarily amounts to that aggravated conduct for which mental distress and possibly punitive damages[5] may be awarded.
 
 
 32
 Even if the union's conduct was so extreme as to warrant compensation for mental distress, there was no evidentiary showing or judicial finding that the conduct was the proximate cause of all of appellee's mental suffering throughout his years of unemployment. See St. Clair v. Local 515, International Brotherhood of Teamsters, supra, 422 F.2d at 132. Like the award of back pay, in those exceptional cases which call for mental distress damages, the union should only be liable for the proportionate amount flowing from its conduct and not from the employer's wrongful discharge. Generally, therefore, the union will not be liable for the mental anguish of unemployment, provided it was not responsible for the discharge. The district court's award, to the extent that it charges the union for all the emotional injury of prolonged unemployment, is improper.
 
 
 33
 The district court's award was not based on any finding that appellee suffered actual, though intangible, mental injury. Indeed, no evidence was presented at trial indicating any actual emotional harm. The element of speculation is a necessary evil inherent in valuation of the emotional harm caused by violation of a federal right. Special caution against excessive awards is counseled in the labor law context where a carefully conceived and administered balance between the rights, powers and duties of union, management and individual employee has been established by Congress on a national scale. See Farmer v. United Brotherhood of Carpenters, Local 25, 430 U.S. 290, 305-06, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). For that reason, damages for mental distress are only appropriate in cases of extreme misconduct. Intentional discrimination against an employee because of his non-union status or his criticism of union policies, may cause intangible injuries for which reasonable compensation should be awarded. But the fact that the injury is mental does not mean it need not be actual and subject to proof. See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (only compensation for actual injury caused by violation of procedural due process); Perez v. Rodriguez Bou, 575 F.2d 21, 25-6 (1st Cir. 1978). Particularly in the labor law context, an award of more than nominal damages for mental distress must be based on findings of actual injury. See, e. g., International Brotherhood of Boilermakers v. Braswell, 388 F.2d 193, 199 (5th Cir. 1968). Based on the present record, which is devoid of any evidence of harassment or of actual emotional injury, appellee is not entitled to damages for mental suffering. We accordingly reverse In toto so much of the judgment below as awarded $30,000 for mental suffering.
 
 
 34
 Affirmed in part, vacated in part, and reversed in part. The cause is remanded for recalculation of damages and reconsideration of the question of reinstatement in accordance with this opinion.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 The district court held that the board's decisions not to issue complaints did not constitute res judicata of the federal suit. See Vaca v. Sipes, 386 U.S. 171, 182-83, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). That ruling was not appealed
 
 
 [2]
 For example, the district court ruled that a meeting of the grievance committee was never called to consider appellee's discharge despite testimony of three of appellants' witnesses that such a meeting did occur at which appellee rejected union representation. On this question of historical fact, the district court believed appellee. We cannot say that its finding was clearly erroneous. Similarly, the district court found that the union had in fact received Soto Segarra's initial certified letter requesting a grievance proceeding on December 19, as indicated by the return receipt, despite subsequent denial by the Local's agent
 However, the scope of appellate review of the district court's mixed law/fact determination that appellee's efforts constituted sufficient exhaustion is considerably broader than the "clearly erroneous" standard applicable to findings of purely historical fact. See generally Welch & Corr Construction Corp. v. Wheeler, 470 F.2d 140, 141 (1st Cir. 1972); 5a Moore's Federal Practice P 52.03(2), at 2664-65 (2d ed. 1977).
 
 
 [3]
 In finding discriminatory treatment, the district court cited only the fact that appellee, a dissident, was not reinstated in the union while several other expelled members had been reinstated in the past. The court's opinion does not identify whether the failure to reinstate itself constituted the wrongful discrimination in the court's judgment or was simply evidence of the discriminatory and bad faith animus behind the union's failure to process the grievance. To the extent the district court found discrimination solely in the failure to reinstate, the district court erred. Smith v. Local 25, Sheet Metal Workers International Association, 500 F.2d 741, 750 (5th Cir. 1974). Appellee did not complain of a separate breach of the duty of fair representation for failure to reinstate but only for failure to process his discharge grievance. Thus, discrimination in contexts other than the processing of his discharge grievance is merely relevant evidence that supports the inference of discriminatory and bad faith failure to process appellee's grievance
 
 
 [4]
 See note 3 Supra
 
 
 [5]
 The district court's opinion explicitly designates the award of $30,000 as compensation for mental distress and not as punitive damages. Thus, we need not decide the difficult question of whether punitive damages would be available for breach of the duty of fair representation under any circumstances or on the facts of this case