**Jesus ZUNIGA, Plaintiff-Appellee,**

v.

**UNITED CAN COMPANY; and Driver-Salesmen, Produce Workers, and Helpers, Local 588, Retail Delivery Drivers, Defendants-Appellants.**

**Nos. 85–2013, 85–2030, 85–2489.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1986.

Decided March 6, 1987.

Kenneth N. Silbert, San Francisco, Cal., and Kent Jonas, San Francisco, Cal., for defendants-appellants.

Michael Friedman, Oakland, Cal., for plaintiff-appellee.

Before SNEED and FARRIS, Circuit Judges, and McDONALD,* District Judge.

McDONALD, District Judge:

## I

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action brought by a union member under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1982), against his employer and union. The union and employer had entered into a collective bargaining agreement governing the terms and conditions of plaintiff's employment and containing grievance procedures for resolving disputes arising thereunder. The complaint contended that the employer had breached the collective bargaining agreement and that the union had breached its duty of fair representation with respect to plaintiff's claim for sick leave benefits owing for the period from January 4, 1982, through September 27, 1982.

The collective bargaining agreement provides that employees of United Can Company who are "incapacitated and unable to perform available work" for certain stated reasons including occupational illness or disease are entitled to sick leave pay. When reports filed by the company's physician and the employee's physician disagree as to whether the employee is disabled so as to be entitled to sick leave benefits, the collective bargaining agreement provides for "medical arbitration." The employer and the union jointly select a third physician whose opinion as to the employee's condition will be final and binding.

Jesus Zuniga was first employed by United Can Company on June 4, 1962. At the time he was hired, Zuniga joined Local 768 of the Driver-Salesmen, Produce Workers, and Helpers.

During May and September 1981, United Can Company received separate reports from two physicians stating that Zuniga's employment duties should be restricted to jobs classified as "light duty" since Zuniga was experiencing physical difficulties arising out of a work-related injury to his left arm. In October and November 1981, Zuniga was reassigned to "light duty" jobs from the more physically demanding jobs he had previously performed.

On January 4, 1982, Zuniga presented United Can Company with a report from his own physician stating the Zuniga was suffering "total temporary disability." This medical conclusion conflicted with the two physicians' reports previously received by United Can Company. Zuniga did not

---

* Honorable Alan A. McDonald, United States District Judge, Eastern District of Washington, sitting by designation.

work at the company from January 4 to September 27, 1982.

On January 11, 1982, Zuniga filed the required forms with United Can Company requesting that he be allowed sick leave benefits under the provisions of the collective bargaining agreement and discussed his claim with both the plant personnel manager and the Secretary-Treasurer of Local 768. At trial, the testimony was conflicting with respect to the substance of information provided to Zuniga and the processing of his claim by representatives of both the company and the local union. For example, Zuniga testified that the personnel manager merely stated that the company would not accept his physician's conclusion of "total temporary disability" and that Zuniga would have to return to his assigned light duty job. The personnel manager, however, testified that Zuniga was informed on January 11, 1982, of three options: (a) return to his light duty assignment; (b) resolve the dispute in the physicians' reports through medical arbitration; or (c) remain on an unpaid leave of absence.

In April 1982, United Can Company directed Zuniga to be examined by a physician at Stanford University. Zuniga was so examined, and that physician reported that Zuniga was physically capable of performing specific light duty work.

In mid-June 1982, Zuniga met with the Secretary-Treasurer of Local 768. Zuniga testified that this was the first time he was informed by the union representative that another doctor might become involved and that, if the company wanted to send Zuniga to a "third doctor," then the decision of that doctor would be final.

On September 1, 1982, Zuniga again met with the plant personnel manager and the Secretary-Treasurer of Local 768. The personnel manager indicated that, since it appeared Zuniga could perform no work for the company, United Can would refer Zuniga to a vocational rehabilitation program. However, the personnel manager offered Zuniga the option to be examined again by the physician at Stanford, stating that the company would allow Zuniga to return to work if he was released for work by that

physician. Zuniga agreed to submit to another examination by the Stanford physician. On September 22, 1982, Zuniga was again examined and the physician released Zuniga for "heavy duty" work effective September 27, 1982.

On September 27, 1982, Zuniga returned to work for United Can Company at a job within the heavy duty work classification. Zuniga was able to perform this job without pain by using his right hand for heavy work.

A short time after returning to work, Zuniga learned that he could seek to recover sick leave pay for the period from January 4, 1982, until September 27, 1982, by using the grievance procedure in the agreement. With the assistance of his daughter and a union shop steward, Zuniga prepared and lodged his grievance. United Can denied the grievance on November 10, 1982, on the grounds that Zuniga had conflicting medical reports, had rejected the offer to return to light duty work, had rejected medical arbitration, and had therefore elected to remain on an unpaid leave of absence.

By letter dated November 29, 1982, Zuniga informed his union representative that he had received the company's denial of his grievance, had never refused light work, and had never been offered medical arbitration. After receiving no response from the union, Zuniga personally contacted the Secretary-Treasurer at the union hall on December 17, 1982. Zuniga testified at trial that when he asked his union representative why he had not responded to his letter, the representative said that he was tired of the matter and would do nothing more.

On January 28, 1983, Zuniga's attorney wrote a letter to the union requesting further action on the grievance. On February 14, 1983, the union moved the grievance to the next step.

The merger of Locals 768 and 588 in April 1983, delayed action on Zuniga's grievance. In the transition, records of the grievance were apparently lost. Local 588 asked United Can to provide the union with all medical records prior to proceeding with the next step of the grievance procedure.

The company responded by letter to Local 588, confirmed its prior agreement with Local 768 that Zuniga's grievance would proceed to the next step, restated its position that Zuniga was not entitled to benefits since he had declined medical arbitration, and raised a timeliness defense to further processing of the grievance, but agreed to participate in the next step.

On July 13, 1983, the next step meeting on Zuniga's grievance was held. On July 15, 1983, Local 588 advised Zuniga that the union had offered the option of medical arbitration but had not pursued it because the union perceived that it could jeopardize Zuniga's pending workers' compensation case. By letter dated July 15, 1983, the Secretary-Treasurer of Local 588 also advised Zuniga that the local union would pursue Zuniga's grievance no further.

On October 7, 1983, Zuniga's attorney appealed the decision to the Executive Board of Local 588. On November 10, 1983, the Executive Board held its regular meeting. At this meeting Zuniga was able to explain the substance of his grievance and his desire that the union proceed with the grievance. By letter dated December 5, 1983, the President of Local 588 notified Zuniga that the Executive Board had denied his appeal.

The By-Laws of Local 588 at Article XVII readopts as the Local's Constitution the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers. The International Constitution provides that aggrieved members shall exhaust all remedies afforded in such Constitution and by the International Union before applying to the courts for relief. Article XIX, Section 12(a). The International Constitution further provides that persons aggrieved by the decision of the Executive Board of a local union may appeal to the Executive Board of the Joint Council. Article XIX, Sections 2(a) and 12(c). The International Constitution also provides that "[a]ll decisions following trials or hearings should be made and rendered within sixty (60) days of the date of hearing or trial commenced unless otherwise ordered by the General Executive Board. This time requirement shall not be mandatory but is only directory." Article XIX, Section 13.

Zuniga did not appeal the decision of the Executive Board of Local 588 to the Executive Board of the Joint Council. Zuniga testified at trial that he was not informed, either orally or in writing, that further appeal rights may have been available to him. On January 6, 1984, Zuniga filed his complaint in district court.

Prior to submitting the case to the jury, the parties stipulated that plaintiff's damages for the breach of the collective bargaining claim amounted to $13,560.40, the total amount of sick leave claimed to be owing. The parties also stipulated that the employer was solely responsible for the amount of sick leave owing, if any, and that the trial judge, not the jury, would resolve the issue of whether plaintiff's claims should be dismissed for failure to exhaust internal union remedies.

The jury held that the employer had breached the collective bargaining agreement and that the union had breached its duty of fair representation with respect to plaintiff's sick leave claim. The trial court, having previously denied defendants' motions for directed verdicts, concluded that plaintiff's failure to exhaust internal union remedies should be excused and denied defendants' motions for judgment notwithstanding the verdict. In addition, the trial judge, rejecting the union's contention that counsel had misled the court with respect to the amount of fees incurred by plaintiff, denied the union's motion for sanctions under Fed.R.Civ.P. 11 and ordered further proceedings regarding plaintiff's claim for damages against the union. The trial court ultimately awarded $10,000 damages to plaintiff and against the union so as to compensate plaintiff for attorney fees incurred in prosecuting his claim that the employer had breached the provisions of the collective bargaining agreement. These appeals follow.

## II

### ISSUES

The issues are: (A) whether plaintiff's failure to exhaust internal union remedies

prior to the filing of his district court action was properly excused; (B) whether substantial evidence supports the verdicts against the union and the employer; (C) whether the district court erred in interpreting plaintiff's attorney fee agreement and in refusing to impose sanctions on plaintiff's counsel under Fed.R.Civ.P. 11; and (D) whether the district court erred in awarding $10,000 damages to plaintiff and against the union to compensate plaintiff for fees incurred in the prosecution of his claim against the employer.

## III

## DISCUSSION

### A. Exhaustion of Internal Union Remedies

The parties agree that plaintiff failed to appeal the denial of his grievance to the Executive Board of the Joint Council prior to the filing of his section 301 action in district court. The parties also agree that plaintiff's claims are governed by the six-month statute of limitations of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983). The parties disagree, however, as to the date on which plaintiff's cause of action accrued and whether the statute of limitations was tolled for that period in which plaintiff pursued his internal union remedies.

With respect to the issue of exhaustion of internal union remedies, the trial court denied defendants' motions for directed verdicts and for judgments notwithstanding the verdicts by holding that plaintiff's failure to exhaust internal union remedies should be excused under the general "futility exception" recognized by the Supreme Court in *Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In excusing plaintiff's failure to exhaust all union remedies prior to resorting to the federal judicial forum, the trial court found that plaintiff's action accrued in mid-July 1983, and concluded that a further appeal to the Executive Board of the Joint Council would have likely prevented a judicial hearing on the merits of plaintiff's claims given the applicable six-month limitations period.[1]

### 1. Accrual of Zuniga's Cause of Action

Where, as here, the pertinent facts are not in dispute, the date of accrual of a statute of limitations is a questions of law which we review *de novo. Galindo v. Stoody Co.,* 793 F.2d 1502, 1508 (9th Cir. 1986). In *Galindo,* we stated:

Although the Court in *Del Costello* indicated that section 10(b) requires filing of a duty of fair representation claim within six months of the actions' accrual, it did not provide guidance in determining when a duty of fair representation claim accrues. Courts have generally held that the section 10(b) limitations period begins to run when the employee

---

**1.** The trial judge's November 7, 1984, ruling on defendants' motions for directed verdict was as follows:

The Court: The jury is not present. With respect to the union's motion for directed verdict, as was indicated, the factor in *Clayton* to guide the trial court in deciding whether to require exhaustion is whether exhaustion would unreasonably delay the employee's opportunity to receive a fair hearing on the merits.

Now, as I understand the record, there is a six month statute of limitation, which began to run July 13, 1983.

On November 10, 1983, there was a hearing before the Executive Board.

On December 5, 1983, plaintiff received that decision. Plaintiff would have had only approximately one month from the time of the decision to the expiration of the statute of limitations to appeal to the Joint Council of Teamsters.

It appears that exhaustion, then, might have delayed the employee's opportunity to receive a fair hearing on the merits, and so I think on that basis that I am going to deny the motion. With respect to United Can's motion for directed verdict, the evidence is not as strong as it might be from which a jury might make a finding. I am going to say that it appears to be sufficient evidence for the jury to decide whether plaintiff was disabled, and I am going to deny that motion.

And, likewise, with respect to emotional distress, where the evidence is quite thin, nonetheless, I am going to deny that motion.

We will proceed and have the jury come in. Thank you.

TR. 79–80

"discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." Thus, in a duty of fair representation case, the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union.

This general rule, however, is not consistently applied. This court, in fact, recently acknowledged:

> The question remains open in this circuit "whether accrual occurs when the employee learns, or should have learned, that his dispute was finally resolved, ... or whether accrual occurs when the employee learns, or should have learned, that the union may have violated its duty of fair representation."

*Id.* at 1509 (citations omitted). Applying either of these tests to this case, it plainly appears that Zuniga's section 301 claim accrued on or about July 15, 1983. This was the date on which the Secretary-Treasurer of Local 588 sent his letter advising Zuniga that the union would not further pursue the grievance.[2]

### 2. The "Futility Exception" and Tolling of the Statute of Limitations

The Supreme Court has recognized that district judges are charged with the discretion to excuse the general requirement that union members must exhaust internal union procedures before seeking relief in the judicial forums. The Court has stated:

> In exercising this discretion at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to

reactivate the employee's grievance or to award him the full relief he seeks under Sec. 301; and, third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton, supra,* 451 U.S. at 689, 101 S.Ct. at 2095.

This circuit has allocated the burdens in a Rule 56 motion based on failure to exhaust internal union remedies as follows:

> When a party moves for summary judgment in a Section 301 action citing failure to exhaust internal union remedies, the moving party must first establish the availability of adequate internal union remedies; the burden then shifts to the party opposing the motion to respond by affidavits or otherwise and set forth specific facts showing that exhaustion of remedies would have been futile.

*Scoggins v. Boeing Co., Inc.,* 742 F.2d 1225, 1230 (9th Cir.1984). In *Scoggins,* the panel reiterated that "[t]he determination whether to require exhaustion is left to the sound discretion of the trial court." *Id.* at 1229.

Where there exists any one of the three factors set forth in the *Clayton* "futility exception", it may be unfair to the union member, not the union, to insist on exhaustion of futile remedies. *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks,* 782 F.2d 674, 679 (7th Cir.1986). In *Clayton,* the court "balanced the policies favoring exhaustion against the policies favoring an employee's right to obtain quick judicial protection against arbitrary union conduct and concluded, in the context of futile union remedies, that the

**2.** The union also contends on appeal that plaintiff's cause of action accrued in November 1982, when his grievance was rejected based on the allegation that plaintiff had rejected medical arbitration. However, the record reflects that this contention was not advanced in the trial court in support of the motion for a directed verdict. The record also reflects that the union did not object to the admissibility of evidence relating to events occurring after November 1982, or request any instruction limiting the jury's consideration of such evidence. Since Fed.R.Civ.P. 50(a) requires that "[a] motion for a directed verdict shall state the specific grounds therefore", we need not address the contention that plaintiff action accrued in November 1982.

latter policy outweighed the former." *Id.* at 679–80.

■ The trial judge did not abuse his discretion in concluding that further resort to the internal union appeal procedure would have unreasonably delayed or prevented a judicial hearing on the merits of his claim since the six-month limitation period would have likely expired prior to resolution of the appeal by the Executive Board of the Joint Council. Given the acrual of plaintiff's action on or about July 15, 1983, and the local Executive Board's December 5, 1983, denial of plaintiff's appeal, only slightly more than one month remained for another appeal to be taken, a hearing scheduled and held, and a decision issued. The Constitution, Article XIX, Section 2(a), provides that all matters of appeal shall be taken within fifteen (15) days and that no hearing on any appeal shall be on less than ten days notice to the parties. Further, while the Constitution requires prompt action on appeals, the sixty-day period within which decisions are to be made is merely "directory", not mandatory. Accordingly, the trial judge was within the exercise of his sound discretion in holding that the filing of plaintiff's district court action on January 6, 1984, was not inexcusably premature.[3]

■ Some twenty months after the trial court excused the general exhaustion requirement in this case under the third *Clayton* factor, this circuit first recognized that the statute of limitations applicable to a fair representation claim may in some instances be tolled. On July 15, 1986, this circuit held that "[a] fair representation claim not based on how a grievance is presented to an arbitrator is tolled while good faith attempts are made to resolve that claim through grievance procedures."

*Galindo, supra* at 1510. Not having the benefit of *Galindo* or other Ninth Circuit authorities endorsing such a tolling concept, the trial judge properly rejected the parties' suggestions that a tolling provision be imposed on the section 10(b) limitations period. District courts are, of course, bound by the law of their own circuit, and "are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be." *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (1981), *cert. denied* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

B. *The Sufficiency of the Evidence Issue*

The standard which the Court of Appeals applies in reviewing a grant or denial of a motion for directed verdict or for judgment notwithstanding the verdict is the same standard as is utilized by the district court: viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, a directed verdict or a judgment notwithstanding the verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Peterson v. Kennedy,* 771 F.2d 1244, 1252–56 (9th Cir. 1985) *cert. denied,* — U.S. —, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). The precepts of federal labor policy as well as the substantive principles of federal labor law are significant consideration in reviewing the propriety of a directed verdict in a section 301 case. *Lucas v. Bechtel,* 800 F.2d 839, 850 (9th Cir.1986).

The standard for reviewing a jury verdict is whether it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as ade-

---

**3.** During argument on the union's motion for directed verdict, defense counsel recognized that plaintiff's position as to the limitations issue had at least some validity:

\* \* \* \* \* \*

Now, Plaintiff also raises a question about statute of limitations. My first response to this is that, certainly, if the union internal appeals procedures would take longer than the statute of limitations, the plaintiff wouldn't be required to exhaust.

But the plaintiff has the obligation of proving that that would have occurred. And the way the plaintiff proves that is to go through these procedures, and if they are not completed by the time the statute is about to run, then he files his lawsuit. We certainly could not complain....

TR. 60.

quate to support a conclusion. *Transgo, Inc. v. AJAC,* 768 F.2d 1001, 1013–14 (9th Cir.1985). A jury verdict may be reversed only if it is clearly erroneous. *Id.*

### 1. The Unfair Representation Claim

To establish a breach of a union's duty of fair representation, an employee must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). In the grievance context, a union will breach its duty of fair representation if it ignores a meritorious grievance or processes the grievance in a perfunctory fashion. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985). However, a union does not breach its duty of fair representation when it does not process a meritless grievance or engages in mere negligent conduct. *Galindo,* 793 F.2d at 1513–14. Further, a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance. *Peterson,* 771 F.2d at 1254.

In *Galindo,* this circuit considered a number of possible standards for determining when an omission rises to the level of arbitrariness sufficient to constitute unfair representation. The critical inquiry which crystalized from that review of possible standards is "whether the union's error involved a judgmental or ministerial act." *Galindo,* 793 F.2d at 1514. Where the union fails to perform a ministerial act not requiring the exercise of judgment and there is no rational and proper basis for the conduct, such an omission can constitute arbitrary conduct sufficient to breach its duty of fair representation. *Id.* Additionally, the union's conduct must prejudice a strong interest of the employee. *Id.*

■ Much of plaintiff's evidence at trial related to acts or omissions by the officers of Local 768 and Local 588 which, at most, were merely negligent. For example, the evidence given with respect to the loss of records relating to plaintiff's grievance during the merger of Local 768 into Local 588 gives rise to no inference that such loss occurred for any reason other than negligence in record keeping.

■ However, plaintiff did offer substantial evidence from which it can be inferred that the officers of Local 768 and Local 588 failed to perform ministerial acts without reasonable basis to the detriment of plaintiff's strong interest. For example, according to the testimony admitted in support of plaintiff's claim against the defendant union, the Secretary-Treasurer of Local 768 failed to timely advise plaintiff regarding medical arbitration which plaintiff would have accepted had the option been offered. Further, plaintiff testified that the Secretary-Treasurer of Local 768 refused to contact plaintiff's workers' compensation attorney regarding the possible impact of medical arbitration on plaintiff's then-pending workers' compensation case without any reason and despite plaintiff's request. In addition, the testimony gave rise to inferences that the Secretary-Treasurer of Local 768 failed to timely apprise Local 588 of the existence or status of plaintiff's grievance upon the merger of Local 768 into Local 588, that the Secretary-Treasurer of Local 588 refused to give credence to plaintiff's version of the facts without any rational basis, and that the Secretary-Treasurers of both locals consistently refused to timely pursue plaintiff's meritorious grievance. Such substantial evidence, although hotly contested by the defendant union at trial, was accepted by the jury in rendering its verdict in favor of plaintiff and properly supports the jury's conclusion of unfair representation.

### 2. The Collective Bargaining Claim

■ Similarly, substantial evidence was properly admitted which supports the claim that United Can Company breached the collective bargaining agreement by denying plaintiff's claim for sick leave benefits for the period from January 4, 1982, to September 27, 1982. Although United Can Company contends that plaintiff was able to perform the work of a position which was offered to him, the jury viewed a video tape presentation of various jobs at the plant and concluded that plaintiff was "in-

capacitated and unable to perform available work" under the terms of the agreement. Plaintiff testified concerning the problems and incapacities caused by the injury to his left arm and described in general terms the reasons for his inability to perform the tasks associated with the positions of seamer operator and end packer. In addition, the medical reports of Dr. McIvar and Dr. Hanberry, taken together with plaintiff's own testimony, give rise to conflicting inferences concerning plaintiff's ability to perform the available jobs offered to him at the plant. Accordingly, the several motions for a directed verdict and judgment notwithstanding the verdict were properly denied.

### C. *The Refusal to Impose Rule 11 Sanctions*

Appellate review of orders pertaining to sanctions under Fed.R.Civ.P. 11 may require a number of separate inquiries. *See Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531 (9th Cir.1986); *U.S. v. National Medical Enterprises, Inc.,* 792 F.2d 906, 910–11 (9th Cir.1986); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986). If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review factual determinations of the district court under a clearly erroneous standard. *Golden Eagle,* 801 F.2d at 1538. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo. Id.* Finally, if the appropriateness of the sanction imposed is challenged, we review the sanctions under an abuse of discretion standard. *Id.*

Prior to its 1983 amendment, Rule 11 was interpreted to require subjective bad faith by the signing attorney to warrant imposition of sanctions. *Id.* at 1536. The text of the present rule represents an intentional abandonment of the subjective focus of its predecessor in favor of an objective one. *Id.* The certificate now tests the knowledge of the signing attorney by a "reasonableness under the circumstances" standard. *Id.*

Thus, counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head. Rule 11 now requires that sanctions "shall be assessed if the paper filed in the district court and signed by an attorney or unrepresented party is frivolous, *legally unreasonable,* or *without factual foundation,* even though the paper was not filed in subjective bad faith." *Id.* at 1537 (emphasis added).

Local 588 contends that the district court erred in denying its motion for sanctions which related to plaintiff's request for an award of attorney fees. Applying the test articulated in *Golden Eagle* for Rule 11 sanctions, Local 588 in essence argues that the amount of attorney fees sought by plaintiff was "without factual foundation" as well as "legally unreasonable."

The local's contention that the fee request amount was "without factual foundation" is based on the argument that the fee agreement between plaintiff and his attorney placed a "$1,500 limit" on plaintiff's liability for attorney services in the district court. Local 588 urges that any claim for attorney fees by plaintiff in excess of $1,500 is unwarranted under the fee agreement.

■ The constructions of a contract such as Zuniga's fee agreement with his attorney is a mixed question of law and fact which we review *de novo. Southland Corp. v. Emerald Oil Co.,* 789 F.2d 1441, 1443 (9th Cir.1986); *Hahn v. Oregon Physician's Service,* 786 F.2d 1353, 1355 (9th Cir.1985). The factual findings as to what the parties said and did, however, must be accepted unless clearly erroneous. *Interpetrol Bermuda Ltd. v. Kaiser Aluminum International Corp.,* 719 F.2d 992, 998 (9th Cir.1984). In interpreting a contract, we are guided by the standard of reasonableness. *Southland Corp. v. Emerald Oil Co., supra.*

Even a brief inspection of the written fee agreement entered into between plaintiff and his attorney reveals that it is subject to several interpretations. For example, the fee agreement states that counsel will "charge" $80.00 per hour, but does not

state that plaintiff would pay such an hourly rate.

■ On *de novo* review, we find the terms of the fee agreement to be ambiguous. Viewing the fee agreement in light of the circumstances surrounding its formation as well as the parties' intentions and conduct as set forth in the record the most reasonable interpretation is the trial judge's view that the ambiguous fee agreement required plaintiff to pay attorney fees at a rate of $80.00 per hour for all work performed by his counsel in the district court.

■ However, even if the union was entitled to prevail on its contention that Zuniga's liability for attorney fees was limited to a total of $1,500, the trial judge in the exercise of his discretion could properly award attorney fees in excess of the amount actually paid. The amount of attorney fees actually paid is not one of the factors to be specifically considered in the balancing process required in a determination of reasonable attorney fees. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied sub nom. Perkins v. Screen Extras Guild, Inc.*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Where attorney fees are an element of damages, they are required to be proven as any other item of damages. *Folsom v. Butte County Association of Governments*, 32 Cal.3d 668, 678 n. 16, 186 Cal.Rptr. 589, 596 n. 16, 652 P.2d 437, 444 n. 16 (1982). Where attorney fees are an element of damages, the proper measure of those damages is the reasonable value of such services rather than the amount paid or incurred thereof, although the amount paid or incurred provides some evidence of value. *Guerra v. Balestarieri*, 127 Cal. App.2d 511, 520, 274 P.2d 443, 448 (1st Dist.1954) (professional services of a physician and surgeon); *Townsend v. Kaith*, 34 Cal.App. 564, 168 Pac. 402, 403 (1st Dist. 1917) (medical services).

The local's contention that the requested amount of attorney fees was "legally unreasonable" is based on the argument that plaintiff's attorney failed to properly apportion his time by distinguishing between the separate claims against the employer and local as required under *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1275–76 (9th Cir.1983). Under *Dutrisac*, a union may be held liable for the expense of outside representation if it has failed to process a nonfrivolous grievance fairly. *Id.* However, an award of damages which includes the employee's expense in prosecuting his claim against the union itself is improper since such an award would penalize the union for litigating the issue of whether it breached its duty of fair representation. *Id.* at 1275–76, n. 3.

■ The record does reflect that plaintiff's attorney initially failed to apportion his time between the claims against the company and the union in his original fee request. Instead, plaintiff's attorney submitted to the trial court a claim for damages against the union for $14,910, the total amount billed during 1983 and 1984. However, this conduct, even in the face of *Dutrisac, supra*, was not "legally unreasonable" so as to require the court to impose sanctions under Rule 11. Plaintiff's original fee request was arguably defensible under Ninth Circuit authority which states that "[a]ttorney's fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are proper and one in which they are not allowed." *Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir.1985). Following the district court's ruling that the causes of action against the union and employer were distinctly different, plaintiff's attorney recognized his obligation to apportion fees between the separate claims. The district court did not abuse its discretion in denying the union's motion for sanctions.

D. *The $10,000 Attorney Fee Award*

Finally, Local 588 contends on two fronts that the award of attorney fees in the amount of $10,000 against it was an abuse of discretion. First, the union argues that the award was excessive. Second, it challenges the continuing viability of the *Dutrisac* principle that attorney fees are an

454

element of plaintiff's damages in a duty of fair representation case in light of *Summit Valley Industries v. Local 112, Brotherhood of Carpenters,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982).

The determination of attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Planned Parenthood of Central and Northern Arizona v. State of Arizona,* 789 F.2d 1348 (9th Cir.1986). *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (emphasizing "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters").

With respect to its argument that the district court awarded an excessive amount of attorney fees as damages, Local 558 on appeal urges that the district court apportioned far too much of time and fees to the prosecution of Zuniga's breach of contract claim against United Can Company. Using counsel's billed total of $14,910 for all attorney services, the district court awarded $10,000 damages against the union.

The district court's award reflects a finding that 67% of counsel's efforts were devoted to prosecution of Zuniga's claim against the employer. The union, utilizing a raw percentile score obtained through a page-by-page comparison of the length of witnesses' testimony in the trial transcript, argues that only 37.6% of counsel's time was actually spent litigating Zuniga's claim against the employer. Local 588 urges that the 37.6% figure should also be used to apportion all time spent by Zuniga's attorney on pretrial matters.

▮ We reject the union's contention that a comparison of the length of certain witnesses' testimony at trial accurately reflects the complexity of a claim or the efforts necessarily involved in its successful prosecution. A statistical breakdown of the length of trial testimony is no talisman of claim complexity, pretrial preparation, or success or failure at trial. Even the most simple issue can be overdrawn by inept counsel, or the most difficult resolved

by a single crushing admission. Like any courtship, a skilled trial attorney's seduction of a witness necessarily varies in time and approach.

The district court is in a far more advantageous position to make an apportionment determination than is this panel. The record reflects the trial judge's consideration of factors appropriate in awarding fees as well as a considered reduction of the amount originally sought by counsel. There was no abuse of discretion by the trial judge and we will not disturb his award as being excessive.

Although Local 588 contends that the *Dutrisac* rule adopted by this circuit was modified by *Summit Valley Industries, Inc., supra,* we find this contention to be without merit. In *Summit Valley,* the court was addressing a suit brought under section 303, 29 U.S.C. § 187, which authorizes a private damage action for an employer who has been injured by a union's unfair labor practice. The case did not pertain to suits under section 301, 29 U.S.C. § 185, which authorizes employees' actions against unions for breach of the duty of fair representation.

The remedies under section 303(b) are expressly stated. The statute provides that "[w]hoever shall be injured in his business or property by reason of any violation of subsection (a) in this section may sue therefore in any district court of the United States ... and shall recover the damages by him sustained and the costs of the suit." 29 U.S.C. § 187(b). As discussed at length by the Court in *Summit Valley,* the legislative history of section 303 includes persuasive evidence that Congress did not intend attorney's fees which were expended to stop a union from engaging in illegal activities to be recovered as "damages" under section 303(b). *Id.* at 723.

The remedial scheme contemplated by Congress in enacting section 301 differs. Unlike section 303, section 301 contains no express remedial provision. Thus, upon a finding of unfair representation, "the court must fashion an appropriate remedy." *Vaca v. Sipes,* 386 U.S. 171, 187, 87 S.Ct.

903, 915, 17 L.Ed.2d 842 (1967). The rationale behind the allowance of hybrid section 301 actions is that it would be a "great injustice" to "leave the employee remediless" where his rights have been trampled. *Id.* at 185–86, 87 S.Ct. at 914. As the Supreme Court clearly stated in *IBEW v. Foust,* 442 U.S. 42, 48–49, 99 S.Ct. 2122, 2126, 60 L.Ed.2d 698 (1979), "[t]he fundamental purpose of fair representation suits is to compensate for injuries caused by violations of employees' rights."

■ The Court in *Summit Valley* reaffirmed the traditional American rule that attorney fees are not ordinarily recoverable by the prevailing party in federal litigation in the absence of express statutory authorization. The decision cannot be read as in any way affecting those cases in which the attorney fees are not awarded to the successful litigant in the case at hand, but rather are the subject of the law suit itself. Clearly, it would be error to award Zuniga his attorney fees against United Can Company since to do so would violate the American rule. However, a different situation is presented in his action against the union, for in that action one of the principle elements of damages is the amount Zuniga was forced to expend in attorney fees to do that which the union was obligated but failed to do. Our view that attorney fees are recoverable as an element of damages in such cases is not a novel one, nor is it limited only to this circuit. *See e.g. Segarra v. Sea-Land Service, Inc.,* 581 F.2d 291, 298 (1st Cir.1978); *Milstead v. International Brotherhood of Teamsters,* 580 F.2d 232, 237 (6th Cir.1978), on appeal following remand, 649 F.2d 395, 396 (6th Cir.), *cert. denied* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Harrison v. United Transportation Union,* 530 F.2d 558, 564 (4th Cir.), *cert. denied* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). Therefore *Summit Valley* has wrought no change in the section 301 law of this circuit.

The judgment of the district court is AFFIRMED.